15502

PIEDMONT & NORTHERN RAILWAY COMPANY v. SCOTT
*ET AL.*

(24 S. E. (2d), 353)

May, 1941.

*Messrs. Haynsworth & Haynsworth,* of Greenville, *Mr. J. C. McGowan,* of Charlotte, N. C., and *Mr. R. S. Stewart,* of Lancaster, Counsel for Appellant,

*Attorney General John M. Daniel* and *Mr. Irvine F. Belser,* both of Columbia, Counsel for Respondents,

February 10, 1943.

The opinion of the Court was delivered by Circuit Judge L. D. LIDE, Acting Associate Justice:

In this case the appellant challenges the validity of an order of the Public Service Commission of South Carolina issued under date of March 8, 1939, known as Order No. 2279. The purpose of this order is to introduce in South Carolina, for the first time in the history of railroad operation in this State, a statewide official routing system for the handling of freight in intrastate commerce.

Prior to the adoption of this order there were no restrictions or limitations upon the shipper of freight governing the route over which his goods shall travel from the point of origin to the point of destination. For example, there may be one route over a trunk line, taking in not only trackage owned and operated by such line but also trackage controlled by it though owned by another railroad corporation; and there may be another route, longer or shorter, over the trackage of one of the other trunk lines and of connecting carriers under its control; and there may be a third route which takes in trackage of connecting carriers that are wholly independent of one another. Under the existing rate structure, in such a situation, the shipper could select any one of these three routes, regardless of any disparity in the miles to be covered, and without regard to whether connecting carriers are jointly owned or controlled or are independent railroad corporations; and whatever route he might select, he would be entitled to the established rate for transportation over the shortest of the several available routes.

It is obvious that various considerations might control a shipper in such a situation, perhaps leading him to select the longest rather than the shortest route. Among such considerations might be better service which the shipper thinks he gets from the road or roads making up the longest of the several available routes. Or he may have unloading or warehouse facilities on the tracks which constitute part of the longest route. Or there may be such differences in locations of the tracks or stations of the several carriers at the point of destination as to affect materially handling charges on the freight in question.

But in the Commission's order in question it is indicated that in its opinion the existing situation has undesirable features, described therein as follows: "After carefully considering the entire record the Commission finds therefrom that the routing situation in South Carolina is in a most unsatisfactory condition giving rise to constant irritation and controversy between shippers and carriers and between carriers themselves. There is much uncertainty on the part of both shippers and the carriers as to their rights, and there is such wasteful use of the facilities of the carriers, or at least such demand and opportunity for wasteful use, on account of the transportation of goods by unduly circuitous routes at short line rates, as probably to impair or endanger the ability of the carriers properly and efficiently to perform their public obligations. On account of these conditions the Commission finds that it is necessary in the interest of both the public and the carriers that some definite standards be laid down for the guidance of shippers and carriers, and that the existing situation be corrected in the particulars and in the manner hereinafter provided."

There are two broad classes of railroads in South Carolina affected by the Commission's order. First, there are the three trunk lines known as the Atlantic Coast Line, the Seaboard Air Line and the Southern. Each of these operates over trackage owned by it and over additional track-

age owned by other railroad corporations, which through stock ownership or otherwise are controlled by it. These three trunk lines, through such ownership and control, operate about 89.75% of all the trackage (considered on a single track basis) in the State. The other class of railroad corporations is composed of the independents of which there appear to be about fourteen in the State, operating a total of 381.80 miles of trackage. The appellant, Piedmont and Northern Railway Company, whose tracks are wholly within the bounds of the State, is one of these independents. It operates approximately 101.20 miles of trackage. It also operates as a carrier of interstate traffic through connections at various points with trunk lines.

The operation of the Commission's order was suspended by a preliminary injunction originally granted in the Circuit Court; the Piedmont and Northern Railway Company having attacked the order. Testimony was taken in the Circuit Court, and the decree of the Court sustains the order of the Commission and vacates the injunction. Although the decree of the Circuit Court undertakes to interpret the Commission's order and to clarify what seem to be ambiguities therein, and hence the Commission's order is thus made effective in its practical application only as constructed by the Court, there is no appeal from the Circuit Court decree on the part of the Commission; and in the appeal to this Court none of the trunk line roads have taken any part in the proceedings by way of *amici curiae* or otherwise.

But the appellant, Piedmont and Northern Railway Company, contends that the Commission is without power to make a general routing order and that the order made is in violation of a number of statutory provisions, particularly Sections 8295, 8297, 8312-8315, and 8327 of the Code 1942, and that the effect of the order would be to deprive the appellant of a considerable proportion of the traffic now moving over its lines.

This order is couched in technical terminology, and no useful purpose would be subserved in encumbering the opinion by setting it out in full herein, but a copy of the same will be subjoined to and reported with this opinion for the convenience of those who desire to go into the subject fully.[1]

[1] REPORT OF THE COMMISSION

The proceedings in the above-stated causes, heretofore consolidated by order of the Commission, have been pending since 1930. From time to time during this period the Commission has held numerous hearings, "both formal and informal, and it has also had many conferences with the parties concerned in an effort to reconcile, as nearly as possible, the many conflicting ideas and suggestions urged by the parties upon the Commission, with a view to making some order that would be reasonably satisfactory to all parties in interest. Several previous orders have been made in these causes, but none of them have become final and effective, because in each instance the operative effect of the order has been suspended by the Commission out of deference to insistent objections to the terms of the order made by some party or parties to the proceedings. After thus laboring over the situation for approximately eight years, the Commission now feels that it is justified in assuming that it is not reasonably possible to make any order that will be wholly satisfactory to all parties concerned, or perhaps to any of them, and after duly considering all the varying points of view the Commission, therefore, has determined to make an order which in its judgment is fair and reasonable and also in conformity with the public interest and the law.

It is not deemed necessary to review all the proceedings heretofore had or to state the facts developed in the various hearings, all of which is matter of record. A detailed history of the proceedings and a full statement of the facts developed by the testimony will be found in a tentative order of the Commission dated July 20, 1935, to which due reference may be had for that purpose.

After carefully considering the entire record the Commission finds therefrom that the routing situation in South Carolina is in a most unsatisfactory condition, giving rise to constant irritation and controversy between shippers and carriers and between carriers themselves. There is much uncertainty on the part of both shippers and the carriers as to their rights, and there is such wasteful use of the facilities of the carriers, or at least such demand and opportunity for wasteful use, on account of the transportation of goods by unduly circuitous routes at short line rates, as probably to impair or endanger the ability of the carriers properly and efficiently to perform their public obligations. On account of these conditions the Commission finds that it is necessary in the interest of both the public and the carriers that some definite standard be laid down for the guidance of shippers and carriers, and that the existing situation be corrected in the particulars and in the manner hereinafter provided.

The respondent trunk lines have contended throughout these proceedings that a carrier is entitled to its long haul. In support of such contention the respondents rely largely upon Section 15(4) of the Interstate Commerce Act, 49 U. S. C. A., § 15(4), reading as follows: "In

establishing any such through route the Commission shall not (except as provided in Section 3, and except where one of the carriers is a water line) require any carrier by railroad, without its consent, to embrace in such route substantially less than the entire length of its railroad and of any intermediate railroad operated in conjunction and under a common management or control therewith, which lines between the termini of such proposed through route (a) unless such inclusion of lines would make the through route unreasonably long as compared with another practicable through route which could otherwise be established, * * *."

It will be noted that the term "through route" as used in said statute, has a definite meaning but only insofar as interstate commerce is concerned. The term cannot be applied to South Carolina intrastate commerce in the same way that it is used in the Interstate Commerce Act. There is no law or statutory provision in the Civil Code of South Carolina similar to said Section 15(4) of the Interstate Commerce Act. In this State the law does not guarantee to a carrier its long haul, whether it be the initial intermediate or delivering carrier and manifestly we are not bound by a statute which applies only to interstate commerce.

It is quite important, on public grounds that the citizens who furnish the carriers with business from the pursuits in which they are engaged should not be oppressed with routing restriction which would compel them to use only one transportation route when other routes are available which they desire, at times, to use and which have not been shown to be unreasonable. The public good requires that benefits as well as burdens, shall be justly distributed and that one interest shall not profit unduly at the expense and to the prejudice of another.

In framing these rules the Commission has endeavored to bring about a proper balancing as between the interests of the public, on one hand, and the interests of the carriers on the other.

After due hearing and full consideration,

It Is, Therefore Ordered, That the following basic principles and rules, which carriers and shippers are required to observe, be, and hereby are, adopted:

1. Method of Computing Rates: The rate under the mileage scale shown or carried in the local tariffs of each line or of system lines, or the rate carried in joint or agency tariffs between any two points, shall be the rate for the short single line distance, or the short joint line distance between such points, computed via the shortest route for which there are facilities for the interchange of carload freight without transfer of lading or via the route between such two points which produces the lowest rate.

2. Definition: (a) In applying the provisions of these rules all railroads doing business in the State under the management or control by lease, ownership, association or otherwise, of one and the same person, firm, corporation or association, shall be considered as constituting but one and the same road.

(b) The term "common point" as used in these routing rules means any railroad station served by two or more railroads, but where there is no physical connection between any two of them by which carload freight can be interchanged without transfer of lading.

(c) The term "judgment point" as used in these routing rules, means any railroad station served by two or more separate railroads having physical connection within the switching limits of such station by which carload freight can be interchanged without transfer of lading.

(d) The term "local station" as used in these routing rules, means any railroad station served by only one railroad.

3. Routing: (a) No route shall exceed 190% of the short single line or the short joint line distance between origin and destination for distances of 150 miles or less or 170% for distances over 150 miles; provided, however, that where the short line route exceeds 150 miles and the longer route does not exceed 285 miles and the 190% circuity limitations shall be extended to the said longer route up to and including 285 miles. The circuity limitations contained in this paragraph shall apply to all intrastate traffic except as otherwise provided in sub-paragraph (b) below.

(b) The circuity limitations named in sub-paragraph (a) above shall not be so construed as to abrogate any rate or rates that have been or may in the future be voluntarily established by carriers to meet truck or water competition, which rates have been or may in the future be restricted to specified routes by authority of the Commission.

(c) The rates published for application between common points and local stations served by the same railroad; junction points and local stations served by the same railroad; and/or local stations served by the same railroad will apply only via such railroad from origin to destination except when specific routing is provided.

4. Publication of Rates and Routing: Carriers in publishing tariffs shall incorporate in such tariffs the application of the above rules.

5. Shippers' Right to Designate Route: Nothing hereinbefore contained shall be so construed or so applied as to close or withdraw from service or availability any route or routes, or to deny or in any manner abridge any shippers' right to designate the route or routes via which his shipments may move, but if the route so designated by shippers is not in conformity with the limitations prescribed in Paragraphs 2 and 3, then the method of computing the rate hereinbefore stated shall not be applicable, and the rate to be charged for such shipment shall be the lowest mileage or combination rate applicable via such specified route.

6. Further Orders in Special Cases: After due hearing, either on its own motion or upon motion of any carrier, shipper, or other interested party, the Commission will make such further order or orders as may seem to it necessary and advisable in order to provide for any special contingency or any undue disadvantage or hardship in any special case arising from the application of the provisions of this order.

7. Inconsistent Rules and Orders: From and after the effective date of this order all rules heretofore adopted and all orders heretofore made by the Commission inconsistent with the provisions of this order, to the extent of such inconsistency, are hereby revoked and declared to be of no further binding effect.

8. Effective Date of this Order: This order shall become effective on and after the 8th day of April, 1939.

It is disclosed in the proceedings in the Circuit Court that there is considerable disagreement between the appellant and the Commission as to the meaning and effect of the Commission's order in respect to the resulting routing of intrastate freight from the viewpoint of appellant's interests, the showing and argument of appellant being largely directed to establishing that the Commission's order is so drawn as to extend advantages to the trunk line railroads and their

connecting lines at the expense of the appellant, and to deprive shippers of their statutory right, Section 8327, Code 1942, to designate the route over which their shipments shall travel. It is also contended by the appellant that the order will result in discriminatory practices which will violate statutory prohibitions against discriminations as affecting connecting carriers. All of these contentions are denied by the Commission.

But it is clear that whatever other effect the Commission's order might have on the routing of freight in intrastate commerce within this State, shippers and railroads alike will be affected by that provision of the order which is to the effect that where there are two or more routes (whether involving connecting carriers or not) to a given point of destination, any of such routes which is more than a stated percentage of the distance represented by the shortest of the several routes is penalized by higher rates to such an extent as practically to eliminate it, in at least a number of instances, from competition for freight traffic between the two points in question.

This is definitely shown by the following excerpt from the order:

"Routing: (a) No route shall exceed 190% of the short single line or the short joint line distance between origin and destination for distances of 150 miles or less or 170% for distances over 150 miles; provided, however, that where the short line route exceeds 150 miles and the longer route does not exceed 285 miles the 190% circuity limitations shall be extended to the said longer route up to and including 285 miles. The circuity limitations contained in this paragraph shall apply to all intrastate traffic except as otherwise provided in sub-paragraph (b) below.

"(b) The circuity limitations named in sub-paragraph (a) above shall not be so construed as to abrogate any rate or rates that have been or may in the future be voluntarily established by carriers to meet truck or water competition,

which rates have been or may in the future be restricted to specified routes by authority of the Commission."

If these limitations are not conformed to, then the shipper must pay the composite or higher rate, as specified in Section 5 of the order.

It is unnecessary for us to deal with the conflicts of view of the litigants respecting the precise effect of the Commission's order, or to deal with the interpretative deductions and reconciliations expressed in the decree of the Circuit Court, or primarily with the question whether the order, in its practical effect, violates specific statutory prohibitions or directions, because we have reached the definite conclusion that, independently of the question whether specifically statutory provisions have been violated, the order is beyond the powers of the Commission.

Unlike the case of the Industrial Commission, for example, which is given complete jurisdiction over the subject matter committed to that Commission by the Workmen's Compensation Act, Sections 7035-1 *et seq.*, Code 1942, the Public Service Commission is a governmental body of limited power. It is created by the Constitution itself, Art. IX, Sec. 14. The language of this provision is that the powers of the Commission "over all transporting and transmitting corporations, * * * *shall be regulated by law* * * *." (Emphasis added.)

Pursuant to this constitutional provision the General Assembly created the Public Service Commission "whose *powers* over all transporting and transmitting corporations, and public utilities and duties, manner of election and term of office *shall be prescribed by law.*" Section 8199, Code 1942. (Emphasis added). Thus at the very inception of the consideration of the question whether the Commission has the power asserted by it in a given case we are confronted with both a constitutional and also a statutory prescription that the power exists only if it has been vested in the Commission by act of the General Assembly.

In Section 8204 of the Code (1942) it is provided that the Commission "is hereby vested with power and jurisdiction to supervise and regulate the rates and service of every public utility in this State and to fix such just and reasonable standards, classifications, regulations, practices and measurements of service to be furnished, imposed or observed and followed by every public utility in this State."

Here perhaps is language broad enough to embrace ■ the power asserted by the Commission in this case if such language were applicable to *railroads,* but it is significant that this Court has held that the quoted section of the Code is inapplicable to railroads. *Darby v. Southern Railway Company,* 194 S. C., 421, 10 S. E. (2d), 465; *Southern Railway Company v. Public Service Commission,* 195 S. C., 247, 10 S. E. (2d), 769. There being no similar Code provision specifically applicable to railroads there is here a further indication of the legislative intent that except in administrative matters, the asserted powers of the Commission "to fix such just and reasonable standards, classifications, regulations, practices and measurements of service * * *," must be found in specific statutory provisions in which the powers are expressly granted, or from which the existence of the powers is a matter of reasonably necessary implication.

The principle that when the Commission undertakes ■ to exercise any fundamental regulatory power, this power must be found in specific legislative provisions is recognized in the case of *Darby v. Southern Railway Company, supra.* In that case it appeared that a rule of the Commission requires railroad companies to give notice to the Commission before discontinuing separate passenger service on its line. The defendant railroad company, desiring to substitute mixed trains for separate passenger trains, gave due notice to the Commission of its intention so to do, and proceeded to carry out its plan. Thereupon the Commission sought a writ of mandamus to prevent the railroad from

continuing the substitution of mixed trains on the ground that under a proper interpretation of its rules, and of the statutory powers vested in it, the Commission should be permitted to pass upon the legality and propriety of the proposed change in service before such change is effected. In adjudicating this question, this Court considered the various statutory provisions applicable to railroad passenger service, and came to the conclusion that the rule of the Commission under which it challenged the action of the railroad in question was unauthorized;—"There is nothing in the rule, nor in the statute under authority of which it was passed, which requires a railroad company to do more than give this notice, as neither the statute nor the rule itself mentions the necessity of permission from the commission. If such a procedure as is contended for by the Commission is indeed necessary for the protection of the public, it is a matter for legislative rather than judicial action." (194 S. C., 421, 10 S. E. (2d), 473.)

Turning to the provisions of Chapters 159A and 160 of the Code, relating to the Public Service Commission and to a large extent specifically to railroads, we find that the General Assembly, consistently with the provisions of Section 8199 of the Code that the powers of the Commission "shall be prescribed by law," has undertaken to define the fundamental powers of the Commission in respect to the regulation of rates, standards, classifications, practices, etc. Significant examples are found in such sections as Sections 8297, 8304, 8310-8315 and 8327, which specifically refer to rates for passenger and freight traffic and related questions of discrimination, etc.; Section 8223, which empowers the Commission to make reciprocal demurrage rules; Section 8225 which empowers the Commission to require the installation and use of safety devices; Section 8227 which empowers the Commission to regulate and control the construction of culverts; Section 8228 which authorizes the Commission to make rules and regulations respecting high-

way crossings over railroad tracks; Section 8292-21 which requires the submission to the Commission of all contracts and agreements between railroad companies as to passenger and freight rates; Section 8294 which prohibits unjust discrimination in rates; Section 8297 which prohibits a greater charge for a shorter than a longer distance in one continuous carriage; Section 8304 which empowers the Commission to make just and reasonable joint rates for connecting railroads; Section 8306, which empowers the Commission to prescribe charges for storage of freight and to fix demurrage charges; Section 8327 which gives the shipper the right to designate the route by which his goods shall be shipped; Section 8330 which requires railroads to provide proper facilities for the interchange of traffic with other carriers; and Sections 8414 and 8415, which empower the Commission to require the maintenance of toilet facilities at stations and to require the erection of union stations.

These sections illustrate the wide extent to which the General Assembly has followed the principle of prescribing the regulatory powers, other than the general power to fix rates, of the Commission. These and numerous other sections of the Code are strong indications of a well defined legislative recognition of the constitutional direction that the powers of the Commission "shall be regulated by law;" and a complete negation of the contrary concept that the broad field of railroad regulation has been committed to the rule-making power of the Commission.

It is true that in Section 8292-12 of the 1942 Code it is set forth that the Commissioners shall have "the general supervision of all railroads and railways," but an examination of the whole of this section shows that the supervision thus committed to the Commission has relation "to their [railroads'] condition and the manner in which they are operated, with reference to the security and accommodation of the public and the compliance of the several corporations with the provisions of their charters and the laws

of the State; and *to enforce the provisions of this chapter*; * * *." (Emphasis added.)

Reading the cited section as a whole, in the light of the constitutional provision under which the Commission was created and of the legislation under which it operates, it cannot be thought that such provision goes further than to deal with administrative as distinguished from regulatory matters, or that it purports to nullify the legislative purpose so clearly expressed in the whole scheme of legislation applicable to railroad operation.

Undoubtedly the pertinent statutes are silent on the precise subject of the imposition of rules and regulations respecting the *routing* of freight. There is statutory authority, in connection with the fixing of rates, to establish joint rates for connecting carriers, Sec. 8304, Code 1942, but of course the establishment of such rates is an entirely different thing from making routing regulations the effects of which is to impose *circuity limitations* on the handling of railroad traffic.

In the field of interstate commerce, a different situation prevails. There the subject of routing regulations is committed to the control of the Interstate Commerce Commission by *specific* Federal legislation, 49 U. S. C. A., § 15, Paragraphs 3 *et seq.*

And in respect to intrastate commerce in South Carolina, the Commission itself ruled in 1933 (Order No. 986) that it was without power in this field. In an order then made by the Commission it was stated: "Both the Legislature and this Commission have for many years recognized the right of shippers to route freight in any manner they thought proper, and we see no reason for a departure from this practice. The routing restrictions proposed by the trunk line carriers require a certain routing to prevent the penalty of a higher rate, and when this practice is followed, it will mean depriving the shippers of the State of the right to selecting the route for the movement of their freight, by im-

posing combination local rates on all movement not handled over the specified routes, or else an arbitrary increased percentage of rates, as provided under the report of Mr. Sloan. Competition between carriers demands that they make available for shippers their respective lines, and if by reason of solicitation or efficient service, one line may secure a movement of freight, it should be permitted to handle the same, even though it might have been handled on shorter mileage. To determine in advance all combination movements that may be desired by shippers, and to provide that one routing shall be permitted, while all others shall be excluded or penalized, appears to us to be improper regulation. The question of unduly circuitous routes automatically adjusts itself in intrastate commerce, through the desire of shippers for prompt movements and the wish of carriers to avoid too thin a spread of transportation charges. The interest of the public must be considered as well as the interest of the carriers. Shippers are entitled under the laws of the State and the rules of this Commission to route traffic in such manner as they may think proper and this practice cannot be injurious to carriers unless the routing is so unduly circuitous as to result in transportation loss. Geographically South Carolina is comparatively a small area. Practical operations have demonstrated that unduly circuitous routes are generally avoided by shippers and carriers alike, and confronted with the virtual impossibility of determining in advance the routes which would benefit the public and not unduly discriminatory against carriers, we deem it both inadvisable and unjust to attempt to regulate by restrictive routes, or increased charges over certain routes, the particular routes which must be adopted by shippers."

And it was further stated: "We, therefore, find that even if this Commission had the power and authority under the law of South Carolina, to authorize or prescribe a system for the through routing of intrastate traffic, it would be

unwise to do so; it would not work a permanent solution of the evils complained of by the trunk lines; it would be discriminatory against shippers, against communities and against certain railroads, and would probably force some of the short lines into financial ruin."

The conclusion was then expressed, based upon well-considered reasoning, that the Commission is *without power* to make a general routing order.

Although the record shows that there have been many conferences and hearings on the part of the Commission and interested parties subsequent to the making of this 1933 order, it nowhere appears that, on the basis of testimony taken, any such new factors have entered into the situation as to warrant the present reversal of view on the part of the Commission; and for the reasons hereinbefore and hereinafter set forth it is our opinion that the conclusion reached by the Commission in its 1933 order as to its power is the correct one.

As applied to both State (*Siler v. Louisville & N. R. Co.,* 213 U. S., 175, 29 S. Ct., 451, 53 L. Ed., 753) and Federal (*Interstate Commerce Commission v. Cincinnati, etc., R. Co.,* 167 U. S., 479, 17 S. Ct., 896, 42 L. Ed., 243) legislation creating regulatory bodies to govern transportation, the Supreme Court of the United States has pointed out that asserted powers are not to be derived from mere inference. They must be founded upon language in the enabling acts which admits of no other reasonable construction.

Such bodies, being unknown to the common law, and deriving their authority wholly from constitutional and statutory provisions, will be held to possess only such powers as are conferred, expressly or by reasonably *necessary* implication, or such as are merely incidental to the powers expressly granted. See 51 C. J., 36, 37, where among other things it is said: "Any reasonable doubt of the existence in the Commission of any particular

power should ordinarily be resolved against its exercise of the power." And purely administrative functions are readily distinguishable from the making of regulations affecting substantial rights, which being in derogation of the common law must be directly derived from constitutional or statutory provisions.

The fact that in over fifty years of railroad regulation no such practice as that imposed in the order involved in this appeal (No. 2279) has prevailed in South Carolina, and that the General Assembly, knowing from the annual reports of the Commission that the subject was under continuous and active discussion and controversy for a considerable number of years, during which the power of the Commission was vigorously questioned, is a factor of much, though not controlling weight; and when it is considered that the General Assembly took no action following the determination of the Commission itself in 1933 that it was without power in the premises, the nonaction of the legislative body becomes even more significant.

There is valid support, too, for the views above expressed in the provisions of Section 8314, Code 1942, as was pointed out by the Commission itself in its 1933 order. There it is provided that " * * * in all cases the charges on freight of the same character, having the same original point of shipment and the same destination, shall be uniform to and from all lines making connection with the said railroad at the same point."

A reasonable implication from this statutory direction is that freight rates between given points may not be varied by reason of the fact that different routes covering these two points are of varying lengths, whereas under the order now being considered, restrictive penalty provisions are imposed on the basis of the fact that a given route between two points is a stated percentage in excess of the mileage embraced in another route.

As we have heretofore indicated, we are not primarily concerned with the question as to whether the order under consideration actually violates any specific statutory prohibition or direction, but in addition to what has just been said with reference to Section 8314, it is difficult to avoid the conclusion that the order is likewise contrary to the true intent and meaning of Section 8327, Code 1942, which expressly gives to shippers the right to designate the route or routes by which their goods shall be shipped, and while technically and verbally the right may remain, yet in a realistic sense it is taken away, at least in some instances,. by the imposition of a prohibitory rate.

It being our considered judgment that the order in question is *ultra vires,* that is to say, beyond the power of the Public Service Commission, it follows that the decree of the Circuit Court should be, and is, reversed, and the injunction against the enforcement of the order restored and made permanent. If the conditions referred to in the order are such that they should be remedied this is a matter for the General Assembly, either by direct legislation to that end, or legislation enlarging the powers of the Commission.

Reversed.

MR. CHIEF JUSTICE BONHAM and MESSRS. ASSOCIATE JUSTICES FISHBURNE and STUKES concur.