16130

BEARD-LANEY, INC., *ET AL.* v. DARBY *ET AL.*
(49 S. E. (2d) 564)

See, also, 208 S. C. 313, 38 S. E. (2d) 1.

*Messrs. Odom, Bostick, Littlejohn & Nolen,* of Spartanburg, *for Appellant,* Associated Petroleum Carriers, Inc.,

*Messrs. John M. Daniel, Attorney General,* and *Irvine F. Belser,* of Columbia, for S. C. Public Service Commission, *Appellants,*

384

*Messrs. Frank A. Graham, Jr.,* of Columbia, and *Robert McC. Figg, Jr.,* of Charleston, *for Respondents,*

September 24, 1948.

BAKER. Chief Justice.

The principal question involved in this case is whether it is within the power of the Public Service Commission to approve, after a hearing, the transfer by a motor freight carrier to another freight carrier of a portion of a certificate of convenience and necessity held by the former.

The franchise or certificate in question in this case was held by appellant Sanders Truck Transportation Co., Inc. (which for convenience will hereinafter be referred to as the Sanders Co.). The proposed transferee of a portion of such franchise or certificate was appellant Associated Petroleum Carriers (which for convenience will hereinafter be referred to as Associated Carriers). The portion of the franchise or certificate proposed to be transferred in this case is described as follows:

"Petroleum Products is Bulk: From Belton and Camp Croft pipeline outlets, and from points and places in Charleston County to points and places in South Carolina, with occasional transfers from one agency to another within South Carolina."

The certificate of public convenience and necessity held by Sanders Co., and which hereinafter for convenience will be called the franchise, was granted to that concern on a printed form in use by the Commission for a number of years wherein the Commission sets forth its finding "that public convenience and necessity require" the proposed operation under the terms of Chapter 162, Secs. 8507 to 8530 of the Code. And the franchise is expressed to be conditioned as follows:

"That all motor vehicles operated by virtue of this Certificate shall be so operated in accordance with the said Motor Vehicle Carriers' Law and the Rules and Regulations issued thereunder" and

"conditioned further:

"That neither this Certificate nor the rights granted therein shall be sold, assigned, leased, transferred, mortgaged, pledged, or otherwise hypothecated, *unless first approved by the Commission.*" (Emphasis added.)

Under date of October 17, 1944, Sanders Co. and Associated Carriers applied to the Public Service Commission for authority to make the transfer above referred to. Following certain procedural matters the Commission held a hearing and on the testimony taken granted an order under date of April 11, 1945, approving the transfer.

Thereupon, in a class action brought by respondents Beard-Laney, Inc. and others for themselves and other motor carriers having similar interests, against the Public Service Commission, the Sanders Co. and Associated Carriers, the validity of the above mentioned order of the Commission

was challenged, and an order vacating the same and revoking the certificate issued thereunder was sought.

After the service of answers by the respective defendants (appellants here), the cause was referred to the Master for Richland County, who recommended that the order of the Commission be approved and the complaint dismissed. Upon exceptions to the findings and conclusions of the Master the Circuit Judge held the order of the Commission to be invalid and vacated the same. The matter comes before this Court upon appeal from this order.

None of the testimony taken before the Master is incorporated in the record. From the specific findings of fact made by the Master, however, it is apparent that there was no testimony before him reflecting upon the eligibility of Associated Carriers to take over the franchise in question or its capacity and purpose to adequately serve the public thereunder.

As presented by the pleadings and by the recitals of fact in the Master's report the clear-cut issue is one of power on the part of the Commission to grant the order above referred to.

The contention of the respondents is in effect that the Commission as a governmental agency is a creature of statute; that it has only such powers as are expressly or by necessary implication conferred upon it by legislative act; and that in the legislation under which the Commission operates there is no provision authorizing it to grant permission to the holder a franchise to transfer the same in whole or (as in this case) in part to another carrier. They rely upon such cases as *Piedmont & N. R. Co. v. Scott,* 202 S. C. 207, 24 S. E. (2d) 353.

Respondents recognize the power of the Commission to grant or refuse franchises in the first instance, under rules and regulations prescribed by it within the terms of the

statutes under which it operates. But they take the position that this broader power does not encompass the lesser power of authorizing the transfer of a portion of a franchise already outstanding, and as their chief reason for this position, they contend that on an application for an original franchise the scope of the hearing extends to a consideration of the whole subject of public convenience and necessity, whereas in the consideration of an application for approval of the transfer of a franchise the scope of the Commission's consideration is limited to the determination of the qualifications of the proposed transferee.

We have given careful consideration to the positions thus taken by the respondents, and to others which will be hereinafter referred to, and we have reached the conclusion that the action of the Commission in the present case was taken within the scope of its authority and that there is nothing in the record to justify us in reviewing the Commission's order upon which the present appeal is based.

Among the statutory provisions which delimit the powers and jurisdiction of the Commission in connection with the matter now under consideration are the following:

Section 8508 prohibits the operation of motor bus lines except in accordance with statutory provisions relating to the granting of certificates of public convenience and necessity by the Public Service Commission, and *"such operation shall be subject to control, supervision and regulation by the commission in the manner provided by"* the governing statutory provisions relating to the granting of such certificates. (Emphasis added.)

Section 8510 provides for the granting by the Public Service Commission of different classes of certificates of public convenience and necessity, provided the applicant proposes *"to comply with the other provisions contained in sections 8507 to 8524 and the rules and regulations which*

*may be made by the commission respecting holders of this class of certificates."* (Emphasis added.)

Section 8516. *"The commission is hereby vested with power and authority and it shall be their duty to supervise and regulate every motor carrier in this State."* (Emphasis added.)

Section 8518. *"The commission may, at any time, by its order, duly entered after a hearing had upon notice to the holder of any certificate hereunder, and an opportunity to such holder to be heard * * *,"* if it be the holder has willfully misrepresented any fact in obtaining a certificate or willfully violated or refused to observe the applicable laws of this State, *"or any of the commission's proper orders, rules or regulations, suspend, revoke, alter or amend any certificate,"* for any of the causes encompassed within the regulations contained in the statutes. (Emphasis added.)

Section 8204 of the Code provides that "The public service commission is hereby vested with power and jurisdiction * * * to fix such just and reasonable standards, classifications, regulations, practices and measurements of service to be furnished, imposed or observed and followed by every public utility in this State." (As to applicability of this Statute, see *Piedmont & Northern Ry. Co. v. Scott, supra.*)

■ Purporting to act under its statutory powers, the Commission has expressly recognized the transferability of franchises and "rights thereunder" if "first authorized by the Commission" on forms prescribed and furnished by the Commission. Commission Rule No. 37, Code, Vol. 4, p. 886.

A further rule of the Commission deals with the procedure to be followed by the transferee "in case of change of ownership, or control of the motor vehicle carrier's property, facilities and services." Commission Rule No. 38, Ibid.

We think that the regulations of the Commission above referred to, including the provision in the application for

transfer adopted as a part of the general procedure of the Commission, are well within the legislative contemplation of the powers to be exercised by the Public Service Commission in matters of the present character.

While not in any sense controlling, the fact that this view of the powers of the Commission has been an administrative practice for some years, during which, as far as we know, there has been no judicial or other contest of the matter on the part of interested carriers or the State, and no legislative interference, is entitled to weight as against any doubt that might arise from a strained or narrow construction of the governing statutes. *Read Phosphate Co. v. South Carolina Tax Commission et al.,* 169 S. C. 314, 168 S. E. 722.

Even a governmental body of admittedly limited powers is not in a strait jacket in the administration of the laws under which it operates. Those laws delimit the *field* which the regulations may cover. They may imply or express restricting limitations of public policy. And of course they may contain express prohibitions. But in the absence of such limiting factors it is not to be doubted that such a body possesses not merely the powers which in terms are conferred upon it, but also such powers as must be inferred or implied in order to enable the agency to effectively exercise the express powers admittedly possessed by it. To say otherwise would be to nullify the statutory direction that the agency shall have power to make rules and regulations governing the exercise of its powers and functions.

The power to make rules does not of course extend to the enlargement of statutory powers, nor to the liberalization of the policy of the law beyond the provisions of the governing statutes. But there is a fundamental distinction between an attempted broadening of the scope of the jurisdiction of the Commission and (as here) the formulation of a rule which merely takes into consideration

the action heretofore taken by the Commission on the propriety of the granting of a franchise to a particular individual, and enables the Commission to continue such franchise in effect in the name of some other qualified concern.

A further consideration is the fact that it is very much in the public interests and in line with the legislative policy of regulation, that the Public Service Commission be deemed to have the power to consent to the transfer of a franchise whenever in its opinion this course would be in the public interests. The financial strength of a franchise holder may be so weakened as to give cause for fear as to its ability to continue exercising the franchise, and other considerations may intervene rendering it highly desirable that the franchise be transferred to a concern better able financially or better equipped to fulfill the public needs. To hold generally that the Commission is without power to permit the transfer of a franchise when in its opinion such transfer is in the public interests would be subversive of and not conformable to the general statutory policy which underlies the regulation and supervision of motor carriers by administrative action.

Aside from the question of an alleged violation of the anti-trust laws of the State, raised by the respondents, the record contains no showing that the purposes and public interests which were considered by the Commission at the time of the granting of the franchise to the Sanders Co. will be in any manner impaired by the transfer. We must assume that the door was open to the respondents and other protestants to establish, if they could, that the public interests would suffer from the transfer.

On the contrary, if we were to go into the question of the probabilities in the situation, we would have to conclude that by reason of the nominal capitalization of the Sanders Co., contrasted with the apparent abundant financial capacity of Associated Carriers, as disclosed by the record,

the chances are very strong that the public interests will be better served by the proposed change.

The principle laid down in the *Piedmont & Northern Ry. case, supra,* that the Commission is a governmental body of limited powers, and that its assumption or exercise of power in a given case must find· support in the statutes governing the Public Service Commission, is inapplicable in the present case. There the Commission undertook, contrary to a practice which had prevailed for many years, to introduce a state-wide official routing system for the handling of freight by railroads in intrastate commerce. As we said in that case, the powers and duties of the Public Service Commission in respect to the regulation and control of railroad companies and railroad freight traffic are minutely. defined in the governing statutes, and the freight routing system which the Commission undertook to promulgate constituted the exercise of a fundamental regulatory power over railroads in the State which was not consistent with the detailed statutory powers conferred upon the Commission. The effect of the action of the Commission in that case was found to be to deprive shippers of a statutory right to designate the route over which their shipments shall travel; and the effect of the regulations was found to be discriminatory in favor of the larger carriers and against the smaller carriers. Without passing upon the claims of the litigants as to the specific consequences of the regulations, we concluded that the fundamental change in the routing of freight in South Carolina was not one of the implied powers of the Commission.

Here we have an entirely different question. The granting of certificates of public convenience and necessity is admittedly within the jurisdiction of the Commission. The more limited question of the power of the Commission to permit the transfer of a franchise that has heretofore been granted, after a public hearing and due consideration of the interests of the public, is so closely related to the granting

of a franchise to the transferee in the first instance as to clearly make the approval of the transfer a reaffirmation of the public convenience and necessity found in the hearing on the original application, and the expression of a conclusion that the transferee has the qualifications necessary to enable it to take and exercise the franchise without impairment of the public interests involved.

The authorities cited by respondents to the point that the holder of a franchise to operate a public utility may not divest itself of the obligations to the public assumed in the application for such franchise are not relevant to the issue before us. These authorities apply the principle that having undertaken to apply for and obtain a franchise for the operation of a public utility, which was granted upon the conclusion of the proper public authority that the franchise would serve the public interests, the holder of such franchise may not divest itself of the obligations to the public thus assumed, and thereby deprive the public of some essential public service. These authorities also go to the extent of holding that such voluntary divestiture of public duty may not be accomplished by a transfer of the franchise by the holder thereof to another concern. But it is implicit in all of these authorities that the divestiture of power and duty, with the accompanying transfer of the franchise, was without the authority of the governmental agency having jurisdiction in the premises. Where such consent has been sought, and the transferee of the franchise has been found to possess the means to carry out the franchise and has expressed the desire so to do, the pertinent authorities disclose no principle of public policy which prevents the governing agency from approving the transfer.

"In the absence of limitations or restrictions imposed by constitutional or statutory provisions or by provisions of the grant, franchises are proper subjects of sale or transfer, and the title and enjoyment thereof may

pass from one owner to another." 37 C. J. S., Franchises, §
25, pp. 175, 176.

"In the absence of due authorization, the transfer of
a franchise by the grantee does not relieve the fran-
chise or the grantee from the burdens imposed by the
grant, and the grantee remains liable for damages occasioned
by the exercise of the franchise in the hands of the transferee.
If, however, the consent or approval of the state is obtained
*the effect is the same as though the grant had been made to
the new owner,* and the original grantee does not remain
liable." 37 C. J. S., Franchises, § 25, p. 178. (Emphasis
added.)

"Generally an *unauthorized* transfer of a public utility
franchise is not *ipso facto* void; on the contrary, the transfer
will be treated, ordinarily, as valid and effectual until attacked
by the sovereign grantor in a direct proceeding instituted
for the purpose." (23 Am. Jur. p. 743.) (Emphasis added.)

We are not impressed with the argument of respond-
ents that the transfer should have been disapproved
on the ground that the interlocking interests of As-
sociated Carriers and others constitute a violation of the
anti-trust laws of the State. Code, § 6620 *et seq.* It may be
true that if the record before the Commission had disclosed
beyond question that inherent in the application for the
transfer of the franchise there was a violation of law or
public policy, it would be the duty of the Commission to
take that into consideration in determining upon the pro-
priety of authorizing the transfer. The same of course would
be true when the Commission passes upon an application for
an original franchise. But when the alleged legal vice is not
one that inheres in the existence of ownership or operation
of the franchise or in the propriety of the transfer, but re-
lates to an entirely foreign subject involving an independent
branch of substantive law, we cannot see how it can be
reasonably contended that the Commission shall constitute

itself a judicial tribunal with power to condemn and in effect convict a party before it on an unrelated violation of law involving severe penalties, both civil and criminal. But for present purposes it suffices to say that if Associated Carriers and the other concerns mentioned by the respondents are deemed to be operating upon a plan which violates the anti-trust laws of the State, the remedies are to be found in the specific provisions of the anti-trust statutes themselves and not in a case of the present character.

The appellants earnestly contend that the respondents have no standing in this Court to raise the issue hereinabove discussed, their position being that in any aspect of the matter the transfer of the franchise was voidable and not void, and that only the State has the right and power to institute proceedings to invalidate the transaction. The authorities on this question are not in harmony, and in large measure the decisions are controlled by the peculiar facts of individual situations or by matters of declared statutory policy or power.

It appears to us that where, as in this case, private competitive considerations are intermingled with public interests, there should be a right of resort to the courts by complainants to allege and prove that the grant or transfer of a franchise will inflict pecuniary loss upon them. But in the light of the conclusions already expressed it is unnecessary for us in this case to deal with that problem except to say that as between the private litigants involved in the present matter we see no violation of law in the action of the commission. Whether other considerations would apply and a different conclusion reached, in the event that the State were the complaining party, need not now be passed upon.

The judgment of the Circuit Court is reversed.

FISHBURNE, STUKES, TAYLOR AND OXNER. JJ., concur.