17779

BLACK RIVER ELECTRIC COOPERATIVE, INC., Appellant, v. PUBLIC SERVICE COMMISSION *et al.,* Respondents

(120 S. E. (2d) 6)

284

*Messrs. Henry B. Richardson, George D. Levy* and *Nash & Wilson,* of Sumter, *for Appellant,*

*Messrs. Daniel R. McLeod, Attorney General,* and *Irvine F. Belser, Assistant Attorney General,* of Columbia, *for Respondent, The Public Service Commission of South Carolina,*

*Messrs. Willcox, Hardee, Houck & Palmer,* of Florence. *Legare & Hare.* of Charleston, *Lee & Moise,* of Sumter, *W. Reid Thompson* and *A. Y. Arledge,* of Raleigh, N. C., *for Respondent, Carolina Power & Light Company,*

*Messrs. Preston H. Callison,* of Columbia, *for C. D. Spangler Construction Company* and *Townsend & Townsend,* of Columbia, *for C. & C. Land Company* and *Midlands Water Development Corporation, Respondents,*

*Messrs. Roberts, Jennings, Thomas & Lumpkin,* of Columbia, *for Central Electric Cooperative, Inc., as Amicus Curiae,*

*Messrs. Henry B. Richardson, George D. Levy, Nash & Wilson,* of Sumter, *for Black River Electric Cooperative, Inc.,* and *Roberts, Jennings, Thomas & Lumpkin,* of Columbia, *for Amicus Curiae, Appellants, in Reply,*

*Messrs. Willcox, Hardee, Houck & Palmer,* of Florence, *Legare & Hare,* of Charleston, *Lee & Moise,* of Sumter, *W. Reid Thompson,* and *A. Y. Arledge,* of Raleigh, N. C., *Attorneys for Respondent, Carolina Power & Light Company, in Reply,*

May 11, 1961.

OXNER, Justice.

This is an appeal from an order of the Circuit Court refusing to set aside an order of the Public Service Commission. The controversy stems from a claim by the Black River Electric Cooperative, Inc., that the Carolina Power and Light Company should be enjoined from furnishing electricity in a certain area near the City of Sumter, which the Cooperative says is already occupied and adequately served by it.

C. D. Spangler Construction Company and the C & C Land Company purchased approximately 360 acres of land near the corporate limits of Sumter for development as a residential subdivision to be known as Sherwood Forest. Lots were cut and streets laid out. Plans were made for the installation of water and sewerage facilities by the Midlands Water Development Corporation and for the furnishing of telephone service by the General Telephone Company. Both the Cooperative, a nonprofit membership corporation formed under the Rural Electric Cooperative Act, Sections 12-1001 to 12-1083, inclusive, of the 1952 Code, and the Carolina Power and Light Company, a regulated electric utility, have transmission lines running across said property Each serves an adjacent area and is equipped to furnish electric service to this development. Both of these utilities approached the developers seeking to furnish electric service to this area but the developers concluded to apply to the Carolina Power and Light Company for electric service.

Later application was also made by some who had purchased lots in this subdivision.

After the refusal of the developers to purchase electricity from the Cooperative, it petitioned the South Carolina Public Service Commission for an order requiring the Power Company to cease and desist from extending its lines into this development. A rule to show cause was duly issued directed to the Power Company, the developers and the Water Company. The respondents filed a motion to dismiss the petition upon the ground that the Commission was without jurisdiction to entertain the proceedings. They asserted that the Cooperative was not an "electrical utility" or an "interested person" within the contemplation of Sections 24-63 and 24-67 of the 1952 Code under which the proceeding was brought. Subject to their motion to dismiss, responses to the petition were duly filed.

After a lengthy hearing, the Commission issued an order in which it held that the Power Company was not required to secure a certificate of convenience and necessity to extend its lines into this development because (a) it was an extension into a district within which the Power Company had lawfully commenced operations prior to April 8, 1932, (b) that it was an area already served by the Power Company in the ordinary course of its business, and (c) that said area was contiguous to an area already occupied by the Power Company and not receiving similar service from another electrical utility. Section 24-63 of the 1952 Code. The Commission further held that the developers had sound reason for preferring the service of the Power Company and should be permitted to choose which of these utilities should serve them; that it would not be in the public interest to enjoin the Power Company from furnishing electrical service in said area; and that as between the two utilities, competition should be allowed in the public interest. Accordingly, the petition of the Cooperative was denied and the Power Company was directed to furnish electric service to any

person in said area who made application to it. The Commission stated that in view of its conclusions on the merits of the controversy, it was unnecessary to pass upon the jurisdictional question. A petition for a rehearing was filed and denied.

Thereafter the Cooperative brought this action against the Public Service Commission, the Power Company, the developers, and the Water Corporation to review and set aside the foregoing orders of the Commission. It alleged that the findings of the Commission were unwarranted, arbitrary and without evidentiary support. The Circuit Judge overruled the motion to dismiss and held that the Commission had jurisdiction. On the merits of the controversy, he held that the general conclusions of the Commission were amply supported by the evidence and there was no error of law, although he disagreed with a few minor findings. Accordingly, the order of the Commission was affirmed.

We do not reach the merits of this controversy, for we have concluded that the Commission was without jurisdiction to entertain this proceeding and respondents' motion to dismiss should have been granted. This jurisdictional question was preserved on this appeal by respondents' sustaining ground.

In 1932 comprehensive legislation was enacted regulating electric utilities. 37 St. at L. 1497. It is frequently referred to as the Electric Utilities Act. This Act, together with subsequent amendments, is now embodied in Sections 24-1 to 24-176, inclusive, of the 1952 Code. All persons and corporations generating, transmitting and furnishing electricity to the public for compensation are included except "a person, corporation or municipality furnishing electricity only to himself or itself, their residents, employees or tenants when such current is not resold or used by others." Section 24-1. Under the terms of this legislation, the Public Service Commission is empowered to fix rates charged by electric utilities, prevent discrimination, regulate extension and develop-

ment of transmission lines and otherwise supervise the operation of such utilities.

This legislation was designed to require electric utilities to furnish the public, without discrimination, with adequate and efficient service at reasonable rates, and to protect such utilities from ruinous competition which was deemed an economic waste. Competition was eliminated and regulation substituted.

Section 24-3 requires "each electrical utility" to obey and comply with all orders, decisions, rules and regulations made by the Commission. Other sections pertinent to the issue of jurisdiction now under consideration are the following:

Section 24-61 : "When ordered by the Commission after due hearing any electrical utility may be required to establish, construct, maintain and operate any reasonable extension of its existing facilities. If any such extension however, will interfere with the service or system of any other electrical utility the Commission may on complaint and after hearing either order the discontinuance of such extension or prescribe such terms and conditions with respect thereto as may be just and reasonable."

Section 24-63: "No electrical utility * * * shall hereafter begin the construction or operation of any electrical utility plant or system or of any extension thereof, except those ordered by the Commission under the provisions of § 24-61, without first obtaining from the Commission a certificate that public convenience and necessity require or will require such construction or operation. But * * * this section shall not be construed to require any such electrical utility to secure a certificate (a) for an extension within any municipality or district within which it had lawfully commenced operations prior to April 8, 1932, (b) for an extension within or to territory already served by it, necessary in the ordinary course of its business, or (c) for an extension into territory contiguous to that already occupied by it and not receiving similar service from another electrical utility."

Section 24-67: "Whenever an electrical utility * * * is engaged or is about to engage in construction or operation without having secured a certificate of public convenience and necessity as required by the provisions of this chapter, any interested person, corporation or municipality may file a complaint with the Commission. The Commission may, with or without notice, make its order requiring the electrical utility complained of to cease and desist from such construction or operation until the Commission makes and files its decision on such complaint or until the further order of the Commission. The Commission may after hearing make such order and prescribe such terms and conditions in harmony with this chapter as are just and reasonable."

Section 24-68: "If any electrical utility in constructing or extending its lines, plant or system unreasonably interferes or is about to interfere unreasonably with the service or system of any other electrical utility, the Commission on complaint of the electrical utility claiming to be injuriously affected may after hearing make such order and prescribe such terms and conditions in harmony with this chapter as are just and reasonable."

Section 24-134: "The Commission on its own motion or any person, corporation or municipality having an interest in the subject matter, including any electrical utility concerned, may complain in writing setting forth any act or thing done or omitted to be done by any electrical utility in violation, or claimed violation, of any law which the Commission has jurisdiction to administer or of any order or rule of the Commission."

The policy of substituting regulation for competition was not followed when the General Assembly created the South Carolina Public Service Authority, a State owned corporation, in 1934. In *South Carolina Electric & Gas Co. v. South Carolina Public Service Authority*, 215 S. C. 193, 54 S. E. (2d) 777, certain power companies sought to enjoin the Authority from erecting a transmission system which

they alleged would compete with their existing lines and seriously injure, if not finally destroy, them. The Court held that the Authority was not subject to the jurisdiction of the Public Service Commission, that it was not an "electrical utility" within the meaning of the statutes requiring an "electrical utility" to obtain from the Commision a certificate of convenience and necessity, that the power companies had no exclusive franchise to furnish electricity in their respective territories and having no exclusive franchise, no legal right of theirs would be invaded by competition on the part of the Authority. Accordingly, the injunction sought was denied.

The General Assembly passed the "Rural Electric Cooperative Act" in 1939. 41 St. at L. 240. It authorizes the organization of cooperative nonprofit membership corporations for the purpose of supplying electric energy in rural areas. They are empowered to generate, manufacture, and purchase electric energy and sell same to its members, to governmental agencies and to other persons not in excess of ten per cent of the number of its members. Under the terms of Section 12-1005 of the 1952 Code, any electric cooperative organized under the Act is expressly exempted from the jurisdiction and control of the Public Service Commission. We stated in *Bush v. Aiken Electric Cooperative, Inc.,* 226 S. C. 442, 85 S. E. (2d) 716, that such a corporation is not a governmental agency; that the State does not undertake to control its affairs; and that it may be dissolved at the will of its members and upon such dissolution, the State receives none of its property.

It was held in *Heath Springs Light & Power Co. v. Lynches River Electric Cooperative,* 231 S. C. 34, 97 S. E. (2d) 79, that a privately owned power company holding a valid certificate of convenience and necessity from the Public Service Commission to serve a certain rural area was not entitled to enjoin an electric cooperative from invading its territory and serving customers therein.

It thus appears that an electric cooperative may fix its own rates, extend or discontinue its service at will, and enter any rural area regardless of whether such territory is then adequately served by a privately owned electrical utility. These cooperatives are free of any control by the Public Service Commission and are governed solely by their members. But the Legislature, in granting these unusual privileges, did not undertake to give a cooperative the exclusive right to serve anywhere, and did not relieve the privately owned utilities of the duty to supply electricity within economic reach of their lines even though the cooperatives were in a position to render such service. Nor did the Legislature undertake to compel those needing electricity to become members of a cooperative as an alternative of doing without such service.

It is well established that the Public Service Commission is a body of limited jurisdiction and has only such powers as are conferred, expressly or by reasonably necessary implication, or such as are merely incidental to the powers expressly granted. *Beard-Laney, Inc. v. Darby*, 213 S. C. 380, 49 S. E. (2d) 564; *Piedmont & Northern Railroad Co. v. Scott et al.*, 202 S. C. 207, 24 S. E. (2d) 353. This principle seems not to be questioned by appellant. Its position is that the Public Service Commission is empowered to entertain its petition under Sections 24-67 and 24-68 of the Electric Utilities Act. But we do not think these sections apply to an electric cooperative.

Clearly a cooperative is not an "electrical utility" within the meaning of Section 24-61 because the Commission may not require it to extend its facilities. This section further provides that if an extension "will interfere with the service or system of any other electrical utility", the Commission may "order the discontinuance of such extension or prescribe such terms and conditions with respect thereto as may be just and reasonable." We think the words "electrical utility" were used in this sentence in the same

sense as that expression is used in the preceding sentence of this section, namely, an electrical utility subject to regulation by the Commission. It is difficult to see how the Commission could prescribe just and reasonable terms with respect to an extension interfering with the service of another electrical utility unless the Commission had jurisdiction over both utilities. Again in Section 24-63 the words "electrical utility" could only apply to a utility under the regulation of the Public Service Commission.

The observations made with reference to Section 24-61 apply to Sections 24-67 and 24-68. Section 24-67 permits a complaint to be filed with the Commission by "any interested person, corporation or municipality" when an electrical utility seeks to engage in construction or operation without having secured a certificate of convenience and necessity as required by the Act. The Commission may then require such utility to cease and desist from such construction or operation and after a hearing "make such order and prescribe such terms and conditions in harmony with this chapter as are just and reasonable." Manifestly the Commission may not impose terms and conditions on an electric cooperative because it has no jurisdiction over it. Substantially the same provision is found in Section 24-68 which provides that where an extension of a line by an electrical utility unreasonably interferes with the service of any other electrical utility, the Commission 'on complaint of the electrical utility claiming to be injuriously affected may after hearing make such order and prescribe such terms and conditions in harmony with this chapter as are just and reasonable." There is no reason to suppose that the words "electrical utility" were used in Section 24-67, under which appellant's petition is brought, in a sense different from that used in the other sections which we have reviewed.

> The purpose underlying Section 24-63 was to prevent competition between utilities rendering service of the same kind so as to eliminate waste incident to

a duplication of facilities. But these considerations do not apply to cooperatives because they are given the unrestricted right of competition. Electric Cooperatives came into existence long after the passage of the Electrical Utilities Act. We cannot escape the conclusion that the sections we have reviewed, as well as the Act as a whole, contemplate only a complaint by an electrical utility regulated by the Public Service Commission.

Under appellant's proposed construction of the Electric Utilities Act, a cooperative would be enabled to maintain a monopoly. It could prevent the entrance of a private utility into an area which it was serving and compel those needing electric energy to buy solely from it. There would be no means of relief from inefficient service or exorbitant rates. It is not reasonable to suppose that the Legislature intended to permit a situation of this kind which would be so prejudical to the public interest.

We do not think *Bookhart v. Central Electric Power Cooperative, Inc.*, 219 S. C. 414, 65 S. E. (2d) 781, 784, strongly relied on by appellant, requires a different conclusion. It was there held that electric cooperatives are public service corporations upon which the power of eminent domain may be lawfully conferred. In answer to a contention that they did not serve the general public but primarily their own members, the Court said that such corporations are obligated "to make membership available, without arbitrary or unreasonable limitations thereon, to all coming within the purview of that purpose", and that they were subject to regulation by the General Assembly. It was further pointed out that the fact that many members of the public may not be served by such a corporation did not destroy its public character. But the question here is not whether an electric cooperative is a public service corporation in the sense that it can constitutionally be granted the power of eminent domain. We are only concerned with the meaning of "electrical utility" in a statute defining the regulatory jurisdiction of the Public Service Commission.

There remains the question of whether appellant is an "interested" corporation within the meaning of Section 24-67. We have concluded it is not. We think that an "interested" person or corporation is one who has a legal right which will be injuriously affected by the proposed construction or operation. Nowhere do we find that an electric cooperative is given an exclusive franchise to serve rural areas. Having no exclusive franchise to serve the area in controversy, no legal right of appellant will be invaded by the Power Company's competition. Any injury from such competition is *damnum absque injuria*. This conclusion is fully sustained by *South Carolina Electric & Gas Co. v. South Carolina Public Service Authority*, 215 S. C. 193, 54 S. E. (2d) 777, *supra*.

In *Sheridan County Electric Coop., Inc. v. Montana-Dakota Utilities Co.*, 128 Mont. 84, 270 P. (2d) 742, it was held that under the Montana act electric cooperatives do not have an exclusive right to furnish electrical energy to rural areas and, therefore, plaintiff had no standing to enjoin a power company from constructing a distribution line in a certain area which it had been serving with electricity.

In *Alleghany Corp. v. Breswick & Co.*, 353 U. S. 151, 77 S. Ct. 763, 775, 1 L. Ed. (2d) 726, the Court had before it a question as to whether certain parties were entitled to an evidentiary hearing before the Interstate Commerce Commission under a statute which provided: "And shall afford reasonable opportunity for interested parties to be heard." The Court said: "The reference in § 5 to "interested parties;' like the reference in § (1(20) to 'party in interest,' must be interpreted in accordance with the rules relevant to standing to become parties in proceedings under the Interstate Commerce Act. A hearing under that Act is not like a legislative hearing and 'interest' is not equivalent to 'concern.' It may not always be easy to apply in particular cases the usual formulation of the general principle governing such standing—*e. g.*, 'the complaint must show that plaintiff has, or represents others having, *a legal right or interest that will*

*be injuriously affected by the order.' Moffat Tunnel League v. United States,* 289 U. S. 113, 119, 53 S. Ct. 543, 77 L. Ed. 1069. In each case, the sufficiency of 'interest' in these situations must be determined with reference to the particular context in which the party seeks to assert its position." (Italics ours.)

It is true that in *Pee Dee Electric Cooperative, Inc. v. Public Service Commission,* 229 S. C. 155, 92 S. E. (2d) 171, we passed on the merits of an action wherein, as here, an electric cooperative sought an order requiring the Carolina Power & Light Company to cease and desist from extending its lines into a territory which the plaintiff claimed was already adequately served by it. But the question of jurisdiction was not raised by the parties. The failure of the Court *sua sponte* to raise it may not be construed as implying that the Court had jurisdiction. We do not think this case is of any persuasive authority on the jurisdictional question.

Our conclusion that the Public Service Commission was without jurisdiction to entertain appellant's petition is not without precedent. In *Clearwater Power Co. v. Washington Water Power Co.,* 78 Idaho 150, 299 P. (2d) 484, 485, a rural electric cooperative applied to the Public Utilities Commission of Idaho for an order requiring a power company to cease and desist from encroaching into territory already served by the cooperative. The application was made under a statute similar in many respects to our Electrical Utilities Act. It was held that the petition should be dismissed for want of jurisdiction. After quoting the pertinent portion of the statute, the Court said: "The power thus given to the commission to prevent interference by extensions of a public utility into territory already served, is limited to territory already served by 'another public utility', and the complaint which the commission is authorized to hear is the 'complaint 61.526, I. C. The commission is given no authority by that of the public utility claiming to be injuriously affected.' § section to hear the complaint of cooperatives."

In *Socorro Electric Cooperative, Inc. v. Public Service Commission,* 66 N. M. 343, 348 P. (2d) 88, 89, an electric cooperative sought to intervene before the Public Service Commission of New Mexico to protest the application of a privately owned utility to extend its transmission lines, contending that it was already giving service in the territory in which the private utility proposed to extend its lines. The Public Service Commission ruled that it had no jurisdiction over the cooperative and could not grant it any affirmative relief.. This was affirmed by the Supreme Court. The statute there concerning the jurisdiction of the Commission to hear complaints about territorial interference or encroachment by one utility against another, provided in pertinent part as follows: "* * * But, if any public utility in constructing or extending its line, plant, or system unreasonably interferes or is about unreasonably to interfere with the service or system of *any other public utility,* the commission on complaint of the public utility claiming to be injuriously affected, may, after hearing, on reasonable notice, make such order and prescribe such terms and conditions in harmony with this act as are just and reasonable." (Emphasis added.) 1953 Comp. § 68-7-1. The Court held that the cooperative was not a public utility within the meaning of this statute. It is true that in reaching this conclusion the Court gave consideration to certain statutory definitions which are not found in our Act but its conclusion was rested in part upon the fact that the cooperatives were not subject to regulation by the Public Service Commission.

In further support of the views herein expressed, see *San Miguel Power Ass'n v. Public Service Commission,* 4 Utah (2d) 252, 292 P. (2d) 511, and *Wattsburg Telephone Cooperative Ass'n v. Pennsylvania Public Utility Commission,* 182 Pa. Super. 594, 128 A. (2d) 160.

In concluding that appellant was without standing to petition the Public Service Commission for the cease and desist order we are not to be taken as implying that an electric cooperative may not be heard before

the Commission when application is made by a regulated public utility for a certificate of public convenience and necessity. In its consideration of an application for such certificate, the Commission may and should acquaint itself with all facts necessary to enable it to make a proper decision; and to that end it may hear from all persons, including electric cooperatives, who may be in position to give information pertinent to the question of whether or not the issuance of such certificate will be in the public interest. We hold only that an electric cooperative has no standing, under the statutes before quoted, to make a complaint before the Commission.

The proceeding instituted by appellant is dismissed for want of jurisdiction on the part of the Public Service Commission to entertain it.

TAYLOR, C. J., LEGGE and Moss, JJ., and J. M. BRAILSFORD, JR., Acting Associate Justice, concur.