248 S.C. 550 (1966)
151 S.E.2d 849
Ex parte ALLSTATE INSURANCE COMPANY, Petitioner.
In re SOUTH CAROLINA INSURANCE COMMISSION, Appellant,
v.
ALLSTATE INSURANCE COMPANY, Respondent.
Ex parte STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Petitioner.
In re SOUTH CAROLINA INSURANCE COMMISSIONER, Appellant,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Respondent.
18584
Supreme Court of South Carolina.
December 7, 1966.
*551 *552 Messrs. Daniel R. McLeod, Attorney General, and Ben T. DeBerry and Robert W. Brown, Assistant Attorneys General, and Glen E. Craig, General Counsel for South Carolina Insurance Commission, all of Columbia, for Appellant, in both cases.
*555 Messrs. Turner, Padget, Graham & Laney, of Columbia, for Respondent, Allstate Insurance Company.
*557 Messrs. Nelson, Mullins, Grier & Scarborough, of Columbia, for Respondent, State Farm Mutual Automobile Insurance Company.
*558 December 7, 1966.
LEWIS, Justice:
The Chief Insurance Commissioner of South Carolina began, in March, 1966, an investigation into the actions of Allstate Insurance Company and State Farm Mutual Automobile Insurance Company relative to the publication of pamphlets and newspaper advertisements by them in opposition *559 to the adoption by the General Assembly of this State of certain legislation affecting the automobile insurance business. In separate actions instituted in the Richland County Court, each of the insurance companies challenged the authority of the Insurance Commissioner to conduct the foregoing investigation upon the grounds that his actions were (1) without statutory authority; and (2) constituted a violation of their constitutional rights as guaranteed by Article 1, Section 4, of the South Carolina Constitution and the First Amendment of the Constitution of the United States. Responsive pleadings of the Insurance Commissioner also brought in issue the jurisdiction of the Richland County Court to entertain the action and, if it had jurisdiction, whether the companies had an adequate remedy at law which should have been exhausted before seeking equitable relief. The lower court entered judgment in each case sustaining its jurisdiction and the challenge to the authority of the Commissioner, and enjoined the further prosecution of the investigation.
The Insurance Commissioner has appealed from the judgment so entered, presenting, in our view, the following basic issues for determination, to wit:
(1) Did the Richland County Court have jurisdiction to entertain the action;
(2) If so, did the companies have an adequate administrative remedy which should have been exhausted before seeking redress in the courts; and
(3) Did the Insurance Commissioner have authority to conduct the investigation in question?
While separate actions were instituted by the companies and separate appeals have been filed, they have been consolidated for the purpose of argument and decision since they have the same factual background and present identical issues.
On March 1, 1966, a bill (H-2073) was passed in the South Carolina House of Representatives providing, among *560 other things, for the establishment of a State Rating Bureau "for the purpose of establishing uniform and standard rates, rating plans, programs or system, statistical plans and policy contracts" for automobile insurance. The bill was sent to the Senate and received first reading in that body on March 2, 1966. It was then referred to the Senate Committee on Banking and Insurance where it has since remained.
Both, Allstate and State Farm, opposed the enactment of the foregoing legislation. The opposition of Allstate was expressed in a full-page advertisement in several of the major newspapers throughout the State. The advertisement was in the form of an open letter from Allstate's agents in South Carolina to its policyholders, in which the legislation was attacked upon the grounds that a state rating bureau would eliminate competition among companies selling automobile insurance in South Carolina and would result in an increase in insurance rates. The opposition of State Farm was expressed in a pamphlet or brochure mailed to its policyholders in which the legislation was opposed on similar grounds to those urged by Allstate and, additionally, setting forth the alleged cost in North Carolina for the operation of a similar state rating bureau.
In addition to the arguments advanced against the proposed legislation, the advertisement published by Allstate and the pamphlet circulated by State Farm contained a list of the names of the members of the South Carolina General Assembly and a request that they be contacted by the policyholders with an expression of their opposition to the bill.
Thereafter, the House of Representatives passed a Resolution condemning the publication and circulation of the advertisements and pamphlets released by the insurance companies, as containing false and misleading information relating to the bill before the General Assembly, and requested that the Chief Insurance Commissioner "investigate the actions taken by certain insurance companies in opposition to House Bill 2073 and to see that they are prosecuted to the fullest in the event that any of our laws have been violated."
*561 In response to the Resolution passed by the House of Representatives, the Chief Insurance Commissioner initiated the requested investigation by issuing subpoenas directed to several of the agents and officers of Allstate and State Farm requiring them to appear, with their relevant records, before representatives of the South Carolina Insurance Department to testify concerning the publication of advertisements and pamphlets in opposition to the legislation. The subpoenas, in each instance, recited that they were issued "pursuant to the provisions of Sections 37-68 and 37-287 of the South Carolina Code of Laws and in accordance with the request of the South Carolina House of Representatives."
Following the service of the subpoenas upon their agents, the insurance companies, after a hearing, obtained from the Richland County Court the orders, now under appeal, permanently enjoining the Chief Insurance Commissioner from proceeding with the aforesaid investigation.
At the outset, it is argued that the Richland County Court had no jurisdiction over the particular cause. This is based upon the contention that the present proceeding is in the nature of an appeal from a decision of the Insurance Commissioner, and that the Richland County Court has no appellate jurisdiction in such matters.
The jurisdiction of the Richland County Court in civil matters is conferred by Section 15-764, 1962 Code of Laws, as amended by Act No. 698 of the 1964 Acts of the General Assembly. This statute confers upon the county court concurrent jurisdiction with the Court of Common Pleas of Richland County, within monetary limits not here relevant, "in all civil cases and special proceedings, both at law and in equity." However, its appellate jurisdiction is limited to appeals from judgments rendered in magistrate's courts in civil cases. City of Columbia v. South Carolina Public Service Commission, 242 S.C. 528, 131 S.E. (2d) 705.
The question as to the jurisdiction of the Richland County Court over the present proceeding is confined by the briefs *562 to whether this is an original action or an appeal from a decision or order of the Insurance Commissioner; and our decision of the question is so limited. The brief of the Commissioner concedes that, "if the matter was an original action or proceeding, the Richland County Court would undoubtedly have jurisdiction. On the other hand, if it was, in reality, an appeal from an order or decision of the Commissioner, then it is equally clear that the Richland County Court would not have jurisdiction since its appellate jurisdiction is limited to appeals from judgments rendered in magistrate's courts in civil cases."
The proceedings brought by the insurance companies were clearly original actions and not appeals. The Insurance Commissioner had initiated an investigation into the actions taken by the companies. The first action taken by the Commissioner was the issuance of subpoenas directing the companies' agents to appear to testify. These proceedings were instituted immediately thereafter. They did not seek a review of any administrative decision or order, but were brought to challenge and restrain the investigation alleged to have been initiated without statutory authority. Since the proceedings were original actions, and not appeals, they were within the jurisdiction of the Richland County Court.
It is next contended that Allstate and State Farm were not the real parties in interest and therefore could not maintain the present actions. This contention is based upon the premise that the activities of their agents were under investigation and not the companies. Of course, "unless the real party in interest institutes the suit and is before the Court, the Court is without jurisdiction." Wilson v. Gibbes Machinery Co., 189 S.C. 426, 1 S.E. (2d) 490.
The record conclusively shows that the insurance companies are the real parties in interest. The House Resolution, requesting that the investigation be made, referred to the actions of the "insurance companies"; and the subpoenas issued *563 by the Commissioner were directed to the individuals as agents and officers of the companies. In addition, the Answer and Return of the Commissioner in each case alleges that "the request by the South Carolina House of Representatives for an investigation of this matter, caused the Chief Insurance Commissioner, pursuant to statutory authority, to take immediate steps to investigate and inquire into such statements to determine whether such activities will prohibit petitioner from being issued a certificate of authority to do business in this State for the year beginning April 1, 1966."
The investigation was begun by the Insurance Commissioner who had the authority to license insurance companies to do business in this State. Sections 37-101 and 37-107, 1962 Code of Laws. The foregoing allegations in his Answer and Return constitute an admission by the Commissioner that at least one purpose of the investigation was to determine whether Allstate and State Farm would be allowed to continue to do business in this State. Certainly the refusal to renew their licenses would occasion heavy financial loss to them. Such threat to their right to do business in this State gave to the companies sufficient interest to maintain these actions to determine the authority of the Commissioner to investigate the activities in question.
The next question concerns the authority of the Insurance Commissioner to conduct the investigation into the questioned activities of the companies and their agents.
We are not here dealing with the power of the legislature to investigate. The House Resolution, requesting the Insurance Commissioner to investigate, did not have the force and effect of law and added nothing to the investigative powers of the Commissioner.
The power of an administrative agency to investigate requires the same statutory authority as any other administrative action. Its powers to investigate and elicit information are therefore derived from and limited by the authorizing statutes. 1 Am. Jur. (2d), Administrative *564 Law, Section 91. Calhoun Life Insurance Co. v. Gambrell, 245 S.C. 406, 140 S.E. (2d) 774.
The Commissioner asserts that he had authority under Sections 37-68 and 37-287 of the 1962 Code of Laws to determine whether the activities of the companies in opposition to the legislation violated any provisions of the insurance laws so as to affect their right to continue to do business in this State.
The foregoing statutes authorize the Commissioner, upon his own motion or upon written complaint by any citizen that a company authorized to do business in this State has violated any of the provisions of the insurance laws, to investigate the matter and, if necessary, examine under oath, the president and such other officers or agents of the company as may be deemed proper, and also all relevant books, records and papers of such company. In carrying out any such investigation, the Commissioner is granted the power to compel the attendance of witnesses to testify in relation to any matter which, by the statutes, is made a proper subject of inquiry and investigation.
Admittedly, the only statute claimed to have been violated by the companies and as to which the investigation was limited, was Section 37-1205 of the 1965 Supplement to the 1962 Code of Laws, which is as follows:
"No person shall make, publish, disseminate, circulate or place before the public or cause, directly or indirectly, to be made, published, disseminated, circulated or placed before the public in a newspaper, magazine or other publication, in the form of a notice, circular, pamphlet, letter or poster, over any radio station, television, or in any other way of (an) advertisement, announcement or statement containing any assertion, representation or statement with respect to the business of insurance or with respect to any person in the conduct of his insurance business which is untrue, deceptive or misleading."
The foregoing statute relates to trade practices "with respect to the business of insurance;" and the authority of the Insurance Commissioner to investigate *565 the matters therein enumerated is limited to such as are related to the business activities of the insurance company. Nowhere do the statues, either expressly or by implication, show an intent on the part of the Legislature to extend the regulatory or investigative powers of the Commissioner to other than commercial or business activities of an insurance company or its agents.
It is undisputed that the investigation undertaken by the Commissioner related solely to the publication of the newspaper advertisements and the circulation of pamphlets by the companies and their agents in opposition to House Bill No. 2073, then pending before the General Assembly of South Carolina. The investigation originated not because of any question on the part of the Commissioner, or any complaint to him, as to the solvency of the companies or any activity relating to the transaction of insurance business with the public, but solely as a result of the companies' activities in opposition to legislation pending before the General Assembly.
The advertisements and pamphlets did not attempt to promote the sale of insurance or misrepresent any matter affecting the terms or provisions of insurance policies. They represented opinions of the companies with respect to the legislation then pending before the General Assembly and in no way related to the contractual relationship between the companies and their insureds. Their activities clearly related to political, and not business, activity. There is nothing in the statutes involved to indicate any purpose on the part of the General Assembly to regulate such activities on the part of insurance companies.
We therefore hold that the actions of the companies in opposing legislation considered by them to be against their best interests were not activities "with respect to the business of insurance", within the meaning of Section 37-1205, supra, which the Insurance Commissioner is authorized to regulate or investigate. The Commissioner was clearly without authority to investigate the *566 questioned activities of the companies and their agents and the lower court was correct in so holding.
The conclusion that the Commissioner was without statutory authority to conduct the present investigation renders unnecessary a decision of the constitutional questions argued in the briefs.
Finally, it is contended that the lower court should have denied injunctive relief because of the existence of an adequate administrative remedy to test the authority of the Commissioner to conduct the investigation, and that the companies should have been required to first exhaust the administrative remedy before seeking redress in the courts.
The statutes of this State authorize the Insurance Commissioner to compel the attendance of witnesses to testify as to matters which are proper subjects of investigation by him and confers the power of a circuit judge to punish for contempt any witness failing to answer any summons or refusing to testify when so required. Section 37-68, 1962 Code of Laws. The statutes also grant the right to any aggrieved party to obtain a review by the circuit court of any decision or order issued by the Commissioner, including any order for contempt for failure to testify. Sections 37-70 and 37-1212, 1962 Code of Laws.
It is argued that the companies had a remedy by appeal after submitting to the investigation and challenging the authority of the Commissioner in those administrative proceedings, either by subjecting the witnesses to contempt orders for refusing to testify or by awaiting the order or decision of the Commissioner after the investigation was completed.
The companies were doing business in this State. Subpoenas were issued to their agents to appear to testify at a hearing on March 21, 1966. One of the admitted purposes of the hearing or investigation was to determine whether the questioned activities of the companies would prohibit them from being issued a certificate of authority to do business *567 in this State for the year beginning April 1, 1966. In other words, the hearing or investigation was to be held on March 21, 1966 to determine whether the companies would be permitted to continue to do business in this State for the following year which began ten (10) days later, on April 1, 1966.
The Commissioner had the authority to apply direct sanctions against the companies and their agents, either by way of contempt for failure of the witnesses to testify or by revocation of their authority to do business in this State.
The rule is well settled in this State "that generally the exhaustion of administrative relief available to a party is necessary before the party can seek redress in the courts." Lominick v. City of Aiken, 244 S.C. 32, 135 S.E. (2d) 305, and cases cited therein.
While we have, where the question was involved, rather consistently applied the doctrine of exhaustion of administrative remedies to avoid interference with the orderly performance of administrative functions, we have recognized that it is not an invariable rule. For example, in Pullman Co. v. Public Service Commission, 234 S.C. 365, 108 S.E. (2d) 571, the application of the doctrine was approved as a "proper exercise of the discretion of the court." The adoption of the view that the rule is discretionary in nature is a recognition that situations can exist where failure to exhaust administrative remedies may be excused.
Injunctive relief was sought in this case upon the ground that the Insurance Commissioner was without authority to proceed with the investigation into purely political activities of the companies and their agents. The issue was solely one of law as to the statutory authority or jurisdiction of the Commissioner. The facts in regard to that issue were undisputed. Under the undisputed facts, the Commissioner was obviously without such authority. These circumstances afforded a sound basis for the action of the lower court in excusing the failure of the companies to first *568 seek relief in the administrative proceedings and in granting injunctive relief.
For a discussion of the exceptions to the application of the doctrine of exhaustion of administrative remedies where jurisdictional issues are involved, see: 2 Am. Jur. (2d), Administrative Law, Section 604; 73 C.J.S., Public Administrative Bodies and Procedures, § 42; 3, Davis Administrative Law Treatise, Sections 20.1 et seq.; 13 S.C.L. 31.
Affirmed.
MOSS, C.J., BUSSEY and BRAILSFORD, JJ., and LIONEL K. LEGGE, Acting Associate Justice, concur.