18316

CALHOUN LIFE INSURANCE COMPANY and Calhoun Fire and Casualty Insurance Co., Respondents, and Woodrow Easler, as Agent for Better Loans, Inc., C. V. Bennett, as Agent for Lewis-Bennett Finance Company, Inc., C. A. Byce, as Agent for Guarantee Loan Company, Inc., and M. E. Byce, as Agent for Lane Finance Company, Inc., Intervening Respondents, v. Charles W. GAMBRELL, as Chief Insurance Commissioner, and the Insurance Commission of South Carolina, Appellants.

(140 S. E. (2d) 774)

*Messrs. Daniel R. McLeod, Attorney General, William L. Pope, Assistant Attorney General,* and *Glen E. Craig, General Counsel, South Carolina Insurance Commission,* of Columbia, *for Appellants,*

*Messrs. Marchant, Bristow & Bates* and *Edwin H. Cooper,* of Columbia, *for Respondents,* and *Moore & Stoddard,* of Spartanburg, *for Intervening Respondents,*

408

*Messrs. Daniel R. McLeod, Attorney General, William L. Pope, Assistant Attorney General,* and *Glen E. Craig, General Counsel, South Carolina Insurance Commission,* of Columbia, *for Appellants, in Reply,*

March 5, 1965.

BUSSEY, Justice.

The basic question involved in this appeal is whether or not the Insurance Commission of South Carolina has any statutory authority to regulate both the rates and the commissions paid in connection therewith on credit life and credit health and accident insurance. ·

By way of historical background, it appears that subsequent to the enactment, in 1956 and 1957, of what is now Chapter 9, Title 8, of the 1962 Code of Laws, regulating small loan companies in this State, the then insurance Commissioner filed in the office of the Secretary of State, on July 29, 1957, a regulation which, among other things, purported to regulate the premium rates which could be charged for credit life insurance and credit accident and health insurance issued in connection with loans made by licensees under the aforesaid Small Loan Act. See 1957 Acts of the General Assembly, page 1520.

On March 9, 1962, a concurrent resolution was passed by the General Assembly in which the Chief Insurance Commissioner was requested to re-examine the actuarial

rates for accident and health insurance used in consumer finance in South Carolina since 1957, with a view to their revision downward. In response thereto, the Chief Insurance Commissioner made a rather full and comprehensive report wherein he pointed out, among other things, that he had endeavored to place, through his discretionary powers, a more realistic ceiling on commissions payable in connection with credit insurance, but had concluded that the Insurance Department was without authority to regulate commissions and had abandoned any such effort. He further stated,

"Our studies also indicate a serious doubt as to whether the Insurance Department possesses any authority, express or implied, to control credit life and credit accident and health insurance rates."

While repeatedly expressing serious doubt as to his authority, the Insurance Commissioner, nevertheless, in a stated attempt to comply with the wishes of the General Assembly as expressed in the concurrent resolution, promulgated another regulation, filed in the office of the Secretary of State on December 4, 1962, (see 1963 Acts of the General Assembly, page 1681), which, among other things, reduced the premium rates on accident and health insurance, written in connection with loans by licensees under the Small Loan Act, below the rates prescribed by the 1957 regulation.

With respect to credit life insurance, the report of the Commissioner states,

"* * * no action can be taken by the Insurance Department since there is no law which permits the Department to control life or credit life insurance rates. * * * Any action along these lines by the Department, of course, must be determined by whatever enabling legislation the General Assembly enacts."

Prior to the aforesaid report of the Commissioner, the Attorney General of South Carolina had advised the Commissioner that the Insurance Department did not have the authority to regulate premium rates for accident and health

insurance. Opinion No. 672, April 27, 1960. Said opinion did not specifically refer to "credit" accident and health insurance, but it is comprehensive and referred to accident and health insurance, without making any exception as to "credit" insurance. Attention was therein called to Code Section 37-653, which specifically exempts accident and health insurance from the provisions of Chapter 7, Title 37 of the Code, which provides for the regulation of rates with respect to "Fire, Marine and Inland Marine and Casualty and Surety Rates", that chapter being the only statutory provision which expressly accords to the Insurance Commission any power to regulate rates.

Even though all of the foregoing was thus brought to the attention of the General Assembly, it has not so far seen fit to enact any legislation which would expressly authorize the Insurance Commission to regulate premiums on credit life insurance, credit health and accident insurance, or commissions payable in connection therewith.

The legislature not having acted, the Commission nevertheless, on February 3, 1964, filed in the office of the Secretary of State a very full and comprehensive regulation applicable to credit insurance issued in connection with loans made by both licensed lenders under the Small Loan Act, and by unlicensed lenders, which, *inter alia,* regulated the premium rates on credit life insurance, rates on credit accident and health insurance, and the commissions payable in connection with all credit insurance. 1964 Acts of the General Assembly, page 3418.

The plaintiffs being engaged, among other things, in writing credit insurance commenced this action seeking to enjoin the defendants-appellants from enforcing the last mentioned regulation insofar as it regulates either the rates or commissions in connection with credit insurance, on the ground that the appellants are without statutory authority to so do. The intervening plaintiffs are agents for lending agencies doing business in South Carolina, and were made

parties plaintiff by order of court, their complaints being substantially the same as the complaint of the plaintiffs.

The matter was heard before Honorable John Grimball, Resident Judge of the Fifth Judicial Circuit, who, after hearing a considerable volume of testimony, filed an order from which this appeal comes.

The order of the circuit judge, while not invalidating the entire regulation, enjoined the appellants from enforcing the regulation insofar as it regulated the commissions to be paid in connection with, and the rates to be charged for, credit life insurance and credit accident and health insurance, on the ground that the appellants had no statutory authority to regulate these matters. His decision that no such authority existed made unnecessary the consideration of incidental questions raised by the pleadings. The fundamental propositions of law governing the issue decided by the circuit judge were aptly stated by him in the following language:

"The Constitution of the State of South Carolina (1895) in Article 1, Section 14 and in Article 3, Section 1, places all legislative power of this State in the General Assembly. *South Carolina State Highway Department v. Harbin,* 226 S. C. 585, 86 S. E. (2d) 466.

"It is elementary law that 'administrative agencies are creatures of statute and their power is dependent upon statute, so that they must find within the statute warrant for the exercise of any authority which they claim.' 1 Am. Jur. (2d), Administrative Law, Section 70, Page 886.

"As the South Carolina Supreme Court said in *Piedmont & Northern Ry. Co. v. Scott,* 202 S. C. 207, 24 S. E. (2d) 353, 360:

" 'Such (administrative) bodies, being unknown to the common law, and deriving their authority wholly from constitutional and statutory provisions, will be held to possess only such powers as are conferred, expressly or by reasonably *necessary* implication, or such as are merely incidental to the powers expressly granted. See 51 C. J. 36, 37, where among

other things it is said: "Any reasonable doubt of the existence in the commission of any particular power should ordinarily be resolved against its exercise of the power." And purely administrative functions are readily distinguishable from the making of regulations affecting substantial rights, which being in derogation of the common law must be directly derived from constitutional or statutory provisions.'

"That this principle is applicable to the Insurance Department is indicated by the case of *Independence Ins. Co. v. Independent Life & Acc. Ins. Co.*, 218 S. C. 22, 61 S. E. (2d) 399, 402, where the Court said, 'Authority need not be cited for the observation that the power of the (insurance) commissioner is derived solely from the statutes. To them alone we look for his authority and jurisdiction.' "

Appellants do not contend that there is any statutory authority which expressly authorizes the regulation by the Commission of the matters here in issue, but do contend that such power is conferred "by reasonably necessary implication", by virtue of Code Section 37-56, which authorizes the Commission to make certain rules and regulations, not inconsistent with law, and other statutes which will be discussed.

Appellants strongly rely on Code Section 8-774, a portion of the Small Loan Act, which reads as follows:

"Sec. 8-774.   Insurance to be related to risk; authorized agencies and companies.—All insurance sold or provided pursuant to this article shall bear a reasonable and bona fide relation to the existing hazard or risk of loss and shall be written by an agent or agency licensed in this State and by an insurance company authorized to conduct such business in this State. (1956 (49) 2502, 2967; 1957 (5) 339.)"

The State Board of Bank Control is primarily charged with the interpretation, administration and enforcement of the Small Loan Act. Assuming, however, without deciding,

that the Insurance Commission is charged with the responsibility of enforcing the quoted section, we see no language therein which by necessary implication confers upon the Commission the power to regulate rates and commissions as contended by appellants. The language of the section makes no reference whatsoever to either premium rates or commissions. We are not called upon to decide precisely what the legislature intended by this section, but, when it is read in context with and in relation to the other sections of that article, we think it probable that the legislature, in providing that insurance bear "a reasonable and bona fide relation to the existing hazard or risk of loss", simply intended that a licensed lender under the Small Loan Act could not require insurance which had no relation to either the risk undertaken by the lender in making the loan and/or any risk or hazard to the security for the loan. We hold only that said section does not confer upon appellants the power to regulate rates and commissions with respect to credit life insurance and credit accident and health insurance.

Appellants also rely on Code Sections 37-181 *et seq.,* governing the capital, surplus, reserve requirements and other financial matters appertaining to insurance companies, as granting such authority by reasonably necessary implication. It is argued that the payment of exorbitant commissions, allegedly being paid by plaintiffs and other companies, with respect to credit insurance will of necessity make the writing of such insurance unprofitable and as a result adversely affect the financial soundness of any company engaging in such practice. It is, accordingly, contended that the commission has the power to regulate commissions in order to prevent such a result.

We shall not here attempt to refer to and review all of the Code sections relied upon by the appellants. In general, these sections, in addition to providing certain specific financial requirements with respect to all companies, give to the Commission and the Chief Commissioner full power to take appropriate action against any particular company which

may be operating in violation of law, or in an unsound financial condition, even to the extent of revoking the license of the same or putting it into receivership. We see nothing in any of the statutes relied upon which by necessary implication confers upon the Commission the power to fix the commission or premium rates with respect to all credit life and credit accident and health insurance written by all companies.

In concluding that the appellants have no such power, a fact of particular importance is that the legislature has not seen fit to take any action subsequent to the opinion of the Attorney General and the report of the Commissioner hereinabove referred to. As stated in *Piedmont & Northern Ry. Co. v. Scott,* 202 S. C. 207, 24 S. E. (2d) 353,

"\* \* \* and when it is considered that the General Assembly took no action following the determination of the Commission itself in 1933 that it was without power in the premises, the nonaction of the legislative body becomes even more significant."

Much of the evidence in this case and the argument of the appellants, would be more appropriate if addressed to the General Assembly in seeking a legislative grant of any needed additional powers, rather than to this court in support of the contention that such powers already exist.

Appellants additionally argue that since the plaintiffs here seek equitable relief, by way of injunction, relief should have been denied under the "clean hands doctrine". It is contended that the decision of the lower court in granting injunctive relief permits the respondents to operate in direct violation of the insurance laws of this state in the following particulars:

1. Discrimination between insureds of the same class and risk and involving the same hazards in the amount of the payment of premiums and rates charged for the insurance in violation of Sections 37-147 and 37-455 of the Code;

2. Splitting insurance commissions in violation of Code Section 37-254; and

3. Doing business through persons not licensed as agents in violation of Code Section 37-247.

We think the clean hands doctrine has no application to this controversy. If the respondents are violating the law in any of the particulars contended by the appellants, the order of the circuit court does not authorize or permit them to continue to do so. Suffice it to say with respect to the alleged violation of law, in each instance the statutory law provides one or more penalties which can be enforced by appellants. See among others, Code Sections 37-148, 37-459, 37-241 and 37-248.

There is nothing in the record here to show that any alleged misconduct on the part of the respondents has injured or prejudiced the appellants in any manner, nor is there any showing of any misconduct in regard to the matter in litigation which is simply the extent, or lack, of authority on the part of the appellants. See *Arnold v. City of Spartanburg,* 201 S. C. 523, 23 S. E. (2d) 735.

Several months subsequent to the decision of this cause by the lower court, appellants moved for an order reopening the case and permitting the introduction of certain evidence based upon examinations of the respondent insurance companies as of December 31, 1963, made pursuant to Section 37-281 of the Code, it being contended that such examinations showed the surpluses of each of said insurance companies to be less than was indicated by the annual reports of said companies. This motion was denied and appellants also appeal from this latter order. Suffice it to say that his Honor correctly held that this latter evidence was not material to the issue involved and not such as would probably change the result if a new hearing were granted. The precise financial condition of the respondent insurance companies had no bearing on whether or not appellants had the power to issue and enforce the provisions

of the regulation here under attack and held invalid by the circuit court.

The judgment of the lower court is, accordingly,

Affirmed.

TAYLOR, C. J., and MOSS, LEWIS and BRAILSFORD, JJ., concur