21201

Otis L. WILSON, J & J Bail Bond Company, Inc., Southeastern Bails & Bond Service, Inc., Individually and on Behalf of Members of the South Carolina Bail Bondsmen Association, Respondents, v. Daniel R. McLEOD, Attorney General for the State of South Carolina and John W. Lindsay, Chief Insurance Commissioner for the State of South Carolina, Appellants.

(265 S. E. (2d) 677)

*Atty. Gen., Daniel R. McLeod, Deputy Atty. Gen., Victor S. Evans, Asst. Attys. Gen., Katherine W. Hill,* and *A. Camden Lewis,* Columbia, *for appellants.*

*Henry W. Kirkland* and *John K. Grisso,* Columbia and *O. Grady Query,* Charleston, *for respondents.*

April 21, 1980.

LITTLEJOHN, Justice:

The Attorney General and Chief Insurance Commissioner of South Carolina appeal from the order of the lower court permanently enjoining them from applying Title 38, *Code of Laws of South Carolina* (1976), (the Insurance Law) to those engaged in the criminal bail bond business. We affirm.

In September of 1976, the Attorney General issued Opinion Number 4437, ruling that a person or company engaging in the bail bond business is transacting surety insurance as that term is defined in § 38-5-20(e). The Chief Insurance Commissioner then, for the first time, took steps to regulate bail bondsmen under the insurance laws applying to surety companies. *See* § 38-13-10 *et seq.* Prior to the effective date of the regulations the respondents, individual and corporate bail bondsmen, brought suit (a class action) to enjoin the enforcement of the regulations. A temporary injunction was issued and remained in effect until the lower court granted a permanent injunction in November of 1978.

It is elementary "that the power of the (insurance) commissioner is derived solely from the statutes. To them alone we look for his authority and jurisdiction." *Calhoun Life Ins. Co. v. Gambrell,* 245 S. C. 406, 412, 140 S. E. (2d) 774, 777 (1965), quoting *Independence Ins. Co. v. Independent Life & Acc. Ins. Co.,* 218 S. C. 22, 61 S. E. (2d) 399, 402 (1950) The appellants contend that the statutory authority to regulate bail bondsmen is found in § 38-5-20, which provides:

"The Chief Insurance Commissioner may license insurance companies, subject to other requiremnets of existing insurance laws, to transact the following kinds of insurance in this State:

. . . . .

"(e) *'Surety insurance,'* meaning becoming surety on, or guaranteeing the performance of any lawful contract except an insurance contract; becoming surety on, or guaranteeing the performance of any bonds and undertaking required or permitted in any judicial proceeding or required or permitted by any government, or any agency or instrumentality of any government."

We are not convinced that the broad interpretation sought is warranted.

While it is true that a bail bondsman is a surety, it does not necessarily follow that an insurance relationship, as contemplated by the statute, is created. The Insurance Law is designed to regulate the issuance of insurance. Section 38-1-30 defines insurance:

*"'Insurance'* is a contract whereby one undertakes to indemnity another or pay a specified amount upon determinable contingencies. The word 'insurance' includes annuities."

It is evident that the bail bonding business does not meet that definition for several reasons. The purpose of the bond is not to indemnify the government.

"The object of requiring bail, and the principle obligations of sureties on a bail bond, is to secure the appearance of the principal to answer the call of the court in accordance with the requirements of the bond, and to submit to the prosecution of the charges that have been made against him until such charges have been disposed of according to law." 8 Am. Jur. 2d *Bail and Recognizance* § 126 (1963).

Furthermore, while the bond is set at a specified amount, the court in its discretion may grant relief from its forfeiture. See § 17-15-180 and *State v. Holloway,* 262 S. C. 552, 206 S. E. (2d) 822 (1974).

The inherent differences between the ordinary surety insurance company and the bail bondsman as surety cannot be ignored. The business of bail bonding involves a principal charged with some crime being released from government custody into the custody of his bailor. Should he fear that he may lose custody of the principal, he is entitled, ". . . as a matter of right, at any time during the return term of the writ against them, to surrender their principal in discharge of their liability, . . ." *Breeze v. Elmore, 4 Rich.* 436, 38 S. C. Law 176 (1851). Surely this is beyond the scope of actions allowed by a surety insurance company.

We recognize the fact that the General Assembly may regulate the bail bond business; we are also aware of the fact that many states have attempted by statute to correct the abuses which have grown up in this field of business endeavor. However, we are of the opinion that it was never the intent of the General Assembly to deal with the bail bond business in Title 38. This was obviously the view of the Insurance Commissioner from the enactment of the Insurance Law in 1947 until the issuance of the Attorney General's opinion in 1976. Certainly, the bail bond business is not included in Title 38 by specificity nor, we think, by necessary implication. So far as the record before us indicates, for some 29 years the General Assembly, by failing

to deal with the bail bond issue, was content with the interpretation which the Insurance Commissioner gave to the statute. We refuse to reverse the lower court, the effect of which would be to permit the Insurance Commissioner to regulate this business. We are not at all sure but that any rules and regulations the Insurance Commissioner might promulgate would invade the province of the Legislative Department. If the business is to be regulated, it should be under such guidelines as the General Assembly dictates.

The order of the lower court is

Affirmed.

LEWIS, C. J., and NESS, GREGORY and HARWELL, JJ., concur.