.0771

Walter B. MUNGO, Appellant v. Rogers T. SMITH, Chief Insurance Commissioner for the State of South Carolina, Respondent.

(347 S. E. (2d) 514)

Court of Appeals

Heard April 23, 1986.

Decided Aug. 4, 1986.

*Charles F. Cooper, II* of *Ratchford & Cooper*, Columbia, for appellant.

*L. Kennedy Boggs, Gen. Counsel,* and *Susanne K. Murphy, Staff Counsel,* of *S. C. Dept. of Ins.,* Columbia, *for respondent.*

GARDNER, Judge:

This action was commenced by the Department of Insurance by a petition the object of which was to require the Chief Insurance Commissioner to rescind its previous order designating Walter B. Mungo (Mungo) as a producer for the South Carolina Reinsurance Facility; he was so appointed pursuant to Section 38-37-150,[1] Code of Laws of South Carolina (1976). The thrust of the petition is that Mungo was designated a producer on February 7, 1977,[2] while his agency was located in the Irmo-St. Andrews area of Lexington County, where there was a market need for the designation of a producer for the Reinsurance Facility, and that Mungo moved his agency in November 1983 to North Main Street in the City of Columbia, where there is no market need for a designated agent. Mungo answered the petition and alleged, *inter alia,* that Section 38-37-150 provides two independent reasons for appointment as a producer, viz., (1) market need or (2) the loss of agency contracts because of the South Carolina Automobile Reparation Reform Act.[3] Mungo alleged and urges that either reason may be the basis of appointment and since he was appointed perforce of reason number two, his moving his agency to Columbia cannot be the basis for the revocation of his producer designation. Mungo further alleged that the Commission had granted designations as producers to other agents without requiring a demonstration of market need or the loss of contracts with insurance companies and specifically alleged several instances of this. Mungo alleges in substance that, because of this last mentioned allegation, to revoke his designation would be an arbitrary decision.

The then Chief Insurance Commissioner Rogers T. Smith appointed John G. Richards V, as the presiding officer for

[1] A 1974 Act. This code section was recently amended by Act No. 145, Section 2, Acts and Joint Resolutions of the General Assembly of South Carolina, 1985.

[2] There is compelling evidence that Mungo had been previously designated as a producer before August 8, 1975.

[3] Act No. 1177, Acts and Joint Resolutions of the General Assembly of South Carolina, 1974, herein referred to as the Insurance Reform Act.

the hearing. We note that Richards is now the Chief Insurance Commissioner for the Insurance Department of South Carolina. Commissioner Richards, after a full hearing, recommended that Mungo's designation as a producer for the Reinsurance Facility should not be revoked. The then Chief Commissioner Smith overruled the recommendation of Commissioner Richards and revoked Mungo's designation. Mungo's appeal to the circuit court resulted in the appealed order affirming Commissioner Smith's revocation of Mungo's designation. We reverse.

Because we are impressed with certain legal conclusions reached by the hearing officer and present Chief Commissioner of the South Carolina Insurance Commission, we report the pertinent provisions of his order.

Having reviewed the record in its entirety, the Presiding Officer concludes that the Respondent, Walter B. Mungo, has not violated any specific provision of Title 38 of the 1976 Code of Laws of South Carolina, as amended, or any specific regulations promulgated by the Department of Insurance that would authorize the Chief Insurance Commissioner to withdraw the Respondent's designation as a Producer for the South Carolina Reinsurance Facility.

In not finding any specific authority for the Chief Insurance Commissioner to withdraw the Respondent's designation as a Producer for the South Carolina Reinsurance Facility, other than for specific violations of the Insurance Code which might be committed by *any* other licensed insurance agent in the State and which might require the permanent revocation of that agent's license to act as an insurance agent in South Carolina, the Presiding Officer must then look to any authority which might arise by "reasonably necessary" implication.

The only provision within Title 38 of the 1976 Code of Laws, as amended, which mentions "Designated Producers" is Section 38-37-150, as amended by Act No. 412 of 1980. That provision speaks only to the "designation" of such Producers and is silent as to the withdrawal of such designation, for any cause. It might be implied that because the Chief Insurance Commissioner has the expressed authority to designate, he then has the implied authority to withdraw such designation. In that case, it

would follow that if a Designated Agent received an appointment, or entered into a contract to write automobile business for another insurer, other than one appointed by the Chief Insurance Commissioner pursuant to that same Section, then the Producer's (or Agent's) designation could, and should, be withdrawn. However, the Presiding Officer cannot stretch this implied authority to withdraw designation to the circumstances surrounding the case at hand. The Respondent was designated in 1977 because he met the requirements contained in Section 38-37-150, as amended, and has merely changed the location of his office, a matter of a few miles, in the same metropolitan area. This does not appear to be a circumstance whereby it would be "reasonably necessary" for the Commissioner to exercise the implied authority to withdraw designation, and as such, leaves a "reasonable doubt" as to whether the power should be "exercised" at all. In fact, when such a "reasonable doubt" exists, we are guided by the following language as contained in *Calhoun Life Insurance Company, et al., v. Gambrell*, 245 S. C. 406, 140 S. E. (2d) 774, 776 (1965):

It is elementary law that "administrative agencies are creatures of statute and their power is dependent upon statute, so that they must find within the statute warrant for the exercise of any authority which they claim." 1 Am. Jur. (2d), Administrative Law Section 70, Page 88G.

As the South Carolina Supreme Court said in *Piedmont & Northern Ry. Co. v. Scott*, 202 S. C. 207, 24 S. E. (2d) 353, 360:

Such (administrative) bodies, being unknown to the common law, and deriving their authority, wholly from constitutional and statutory provisions, will be held to possess only such powers as are conferred, expressly or by reasonably *necessary* implication, or such as are merely incidental to the powers expressly granted. See 51 C. J. 36, 37, where among other things it is said: "Any reasonable doubt of the existence in the commission of any particular power should ordinarily be resolved against its exercise of the power." And purely administrative functions are readily distinguishable from the

making of regulations affecting substantial rights, which being in derogation of the common law must be directly derived from constitutional or statutory provisions.

That this principle is applicable to the Insurance Department is indicated by the case of *Independence Ins. Co. v. Independent Life & Acc. Ins. Co.*, 218 S. C. 22, 61 S. E. (2d) 399, 402, where the Court said, "Authority need not be cited for the observation that the power of the (insurance) commissioner is derived solely from the statutes. To them alone we look for his authority and jurisdiction."

## RECOMMENDATION AND PROPOSAL
## FOR DECISION

The Presiding Officer finds that the Respondent, Walter B. Mungo, did not in the instance at hand violate any provision of Title 38 of the 1976 Code of Laws of South Carolina, or any regulation promulgated by the Department of Insurance that would authorize the Chief Insurance Commissioner to withdraw the Respondent's designation as a Producer for the South Carolina Reinsurance Facility. The Presiding Officer, after reviewing the record in its entirety, can find no specific statutory prohibition expressed or implied or specific regulatory prohibition or specific case law prohibition against a Designated Producer for the Reinsurance Facility, moving his or her place of business from one location to another. There does appear to be a striking absence of any standards of operation for Designated Producers, other than a letter to all Designated Producers dated August 8, 1975, from former Chief Insurance Commissioner John W. Lindsay, which included a "Notice to Designated Producers." (SEE: SCID Exhibit Number 3). Contained within that "Notice to Designated Producers," there is *no* specific prohibition against changing locations. There is language, Item eight, Page three of that Notice, which states:

Selling, negotiating sale, of an agency without informing the purchaser or prospective purchaser, that automobile insurance of an agent is marketed through the

designated producer system. (The designated producer status is nontransferable, and is withdrawn when the *individual* so designated ceases to participate in the insurance operation.)

However, the language quoted above, specifically the word "nontransferable," obviously addresses the Designated Producer's status itself, not the relocation of the Designated Producer's office, especially when read in conjunction with Section 38-37-150 of the 1976 Code of Laws of South Carolina, as amended by Act No. 412 of 1980.

The Presiding Officer takes official notice of a matter of common knowledge that on August 18, 1983, at a meeting of the Board of Governors of the South Carolina Reinsurance Facility, that body officially approved a Designated Agent (Producer) Contract which contained therein, for the first time, a specific prohibition against a Designated Agent (Producer) changing the location of his or her agency from one location to another without the prior approval of the Chief Insurance Commissioner. It is admitted that the Respondent operated as a Designated Producer at 6356 St. Andrews Road, Lexington County, South Carolina, "until November, 1983, at which time Respondent moved his agency to a building located at 2800 North Main Street, in the City of Columbia, Richland County, South Carolina." There is no evidence or testimony to prove that the Respondent entered into the Designated Agent Contract, approved by the Board of Governors of the South Carolina Reinsurance Facility, prior to the date of that move. Consequently, the Presiding Officer is unable to determine whether the Respondent is in violation of the prohibition against changing his location, as contained in paragraph eleven (a) of that Contract, entitled "Limited Agency Agreement," or not.

Therefore, the Presiding Officer recommends that the Chief Insurance Commissioner should issue an Order denying the withdrawal of the Respondent's designation as a Producer for the South Carolina Reinsurance Facility as prayed for in the Petition dated November 23, 1983, and further recommends that this administrative action be dismissed.

Commissioner Smith's order overruling Commissioner Richard's report summarized Commissioner Smith's view thusly:

> It is the Department's position that respondent [Mungo] was designated to fill what was perceived at the time to be a market need in the Irmo-St. Andrews area of Lexington County, and that respondent's unauthorized removal of his agency constitutes a breach of the purposes and conditions for which his designation was originally intended. I agree.

At the core of this decision, as will be later discussed, is whether there is evidence of record to support this finding.

The divergent views of the present Insurance Commissioner and the then Commissioner Smith must be resolved by an interpretation of Section 38-37-150, which provides:

> Section 38-37-150. Survey by Commissioner to ascertain state of marketing outlets.

> Not more than six months after July 9, 1974, or at such earlier time as he deems it necessary by reason of complaints regarding want of access to automobile insurance in particular areas or want of outlets for procedures, the Commissioner shall survey the various areas of the State to ascertain if sufficient marketing outlets exist in all areas or are available to all producers; and upon his finding that insufficient marketing outlets exist in particular areas or that certain producers have been deprived of a market for risks previously serviced by them, the Commissioner may, after consultation with the Facility, designate one or more insurers to service such areas through agents appointed by them or may designate such producers as the agents of any such insurer or insurers. Such arrangements shall include provision for one hundred percent quota share reinsurance through the Facility of any automobile insurance policy marketed through such arrangements, at the option of the insurer, and any such reinsurance shall not be subject to the statutory provisions of rules and regulations regarding excessive utilization of the Facility. The designation of a producer by the Commissioner shall be transferable to a qualified spouse,

child, parent, brother or sister of such producer upon the designated producer's death, retirement or incapacity. [Emphasis ours.]

We agree with Commissioner Richards. The most elementary rule of statutory interpretation is to ascertain and effectuate the legislative intent whenever possible. *McDonald v. State Farm Mut. Auto. Ins. Co.*, 287 S. C. 40, 336 S. E. (2d) 492 (Ct. App. 1985). It is apparent that the legislature had both a public and a private purpose in mind when it passed Section 38-37-150. First, the legislature sought to accomplish the public goal of full availability of automobile insurance on a non-discriminatory basis. Second, the legislature wished to prevent creating economic hardship for insurance agents caused by the termination of agency contracts with insurance companies because of the Insurance Reform Act. The wording of Section 38-37-150 creates two distinct and/or alternate purposes.

In its elementary sense, the word "or" as used in a statute is a disjunctive indicating that the various members of the sentence are to be taken separately. 73 Am. Jur. (2d), *Statutes* Section 241 (1974). Where the statute contains two clauses which prescribe its applicability and the clauses are connected by the disjunctive "or," application of the statute is not limited to cases falling within both clauses, but applies to cases falling within either. *Davis v. N. C. Granite Corporation*, 259 N. C. 672, 131 S. E. (2d) 335 (1963). With respect to Section 38-37-150, the legislature established two separate grounds for the appointment of a designated agent. The word "or" used in the statute marks an alternative and ordinarily means one or the other of two. *Brewer v. Brewer*, 242 S. C. 9, 129 S. E. (2d) 736 (1963).

While on occasions our court has interpreted the word "or" as meaning "and," such an interpretation is strained when applied to Section 38-37-150. We hold therefore that the Commissioner erred in his construction of Section 38-37-150.

We therefore hold that Commissioner Smith's order is erroneous insofar as it holds that market need is or was the only criteria for consideration in the designation of producers for the Reinsurance Facility.

Having so held, we address the issue of whether the appealed order is also erroneous under the Administrative Procedures Act because there is no reliable, probative and substantial evidence of record to support Commissioner Smith's factual conclusion as prescribed by Section 1-23-380, Code of Laws of South Carolina (1976) as amended.

We premise this discussion by reminding the reader that we have held that Section 38-37-150 established two separate grounds for the appointment of a designated agent. Unless there is reliable, probative and substantial evidence to support Commissioner Smith's finding that Mungo was appointed purely on the bases of market need, this case must be reversed. This is true because Mungo's testimony is that he lost his agency contracts with insurance companies because of the 1974 Insurance Reform Act.

The only evidence offered by the Commissioner to prove that Mungo's appointment as a producer was based only upon market need is a letter dated August 8, 1975, sent to designated producers by Commissioner Lindsay to remind them of their obligations. Attached to this letter was a list of rules governing the handling of automobile insurance by designated producers. This letter, for two reasons, we hold, is not evidence that Mungo was designated solely because of market need.

First, the letter was premised upon its first paragraph which is:

This is a personal letter to remind you of your obligations as a designated producer under the provisions of the automobile insurance law of 1974.

The very fact that this letter was mailed to Mungo establishes that prior to the letter on August 8, 1975, Mungo had been appointed as a designated producer; this despite the fact that he evidently was required to reapply in 1977.

The letter also contains this:

The designated producer was created in order to assure the availability of automobile insurance to all citizens of our State and the section authorizing such designation was not enacted for the purpose of keeping insurance agents in the insurance business.

This last quoted provision we hold to be a misinterpretation by Commissioner Lindsay of Section 38-37-150; and furthermore, it is an impermissible assumption of legislative power, which by our State Constitution rests in the. General Assembly.

The list of rules attached to Commissioner Lindsay's letter provided:

> It should be stated that the insurance department has taken the position that no new designations of agents shall be made after August 1, 1975, unless it can be demonstrated by the applicant, as provided in Act No. 1177 of 1974 (Now Section 38-37-150), a "want of access to automobile insurance in particular areas" exists. [Emphasis ours.]

We first hold that the insurance department had no authority to limit the application of Section 38-37-150 to the designation of agents for "want of access to automobile insurance in particular areas" because Section 38-37-150 clearly sets an alternate reason for the appointment of a producer for the Reinsurance Facility, i.e., the loss of agency contracts with insurance companies as a result of the Insurance Reform Act. As long as agents lose their agency contracts because of the Insurance Reform Act, this last mentioned reason for the appointment of producers for the Reinsurance Facility remains viable and we so hold.

Second, we observe that because the letter of August 8, 1975, was written to Mungo as a producer for the Reinsurance Facility, it is clear that Mungo was not in 1977 a new producer.

We further note that Commissioner Lindsay's letter of October 8, 1975, and the attached rules did not prohibit a designated producer's moving his location.

Commissioner Smith relies on the case of *Cooper v. Smith*, 82-CP-40-5325 (Order dated June 23, 1983), a Court of Common Pleas case which was not appealed, to support its finding of no market need in the North Main Street area of Columbia. We hold this ruling is redundant because at the time there was no law or regulation prohibiting a producer from moving his agency; this is especially true as to those producers who were appointed because of losing their

agency contracts with insurance companies because of the Insurance Reform Act.

We hold that the appealed order is erroneous because of the additional reason that there is no reliable, probative or substantial evidence to support Commissioner Smith's finding that Mungo was appointed perforce of market need and not for the second reasons, i.e., that he had lost his agency contract with insurance companies because of the Insurance Reform Act.

On the other hand, we differ with Commissioner Richards's holding that a Chief Insurance Commissioner does not have implied authority under Section 38-37-150 to revoke the designation of a producer for the Reinsurance Facility provided the revocation is with the advice and consent of the Reinsurance Facility Board.

Because of shifting demographic changes which are continually occurring in urban areas, both the availability of insurance agency contracts and the market need for the Reinsurance Facility constantly change. Coincident with the right to employ is the right to discharge *if there is no further need for the employment.* We hold this to be an implicit right of the Insurance Commissioner with respect to the revocation of the designation of producers for the Reinsurance Facility.

We hold, however, that this implied authority of the Insurance Commissioner to revoke a producer's designation cannot be arbitrary. His revocations must be uniform throughout the state and not aimed at one agent, as appears to be the case before us with reference to Mungo. Commissioner Smith's order provided that unless Mungo moved his business back to the St. Andrews area, his designation would be revoked. This does not make sense; the St. Andrews area now has numerous insurance agents and there is, further, a questionable market need there for producers for the Reinsurance Facility.

We also hold that the designation of other producers for the reasons not provided in Section 38-37-150 is admissible to show arbitrary designation of producers for the Reinsurance Facility. In order to revoke a designation as a producer, the Chief Insurance Commissioner must establish that the revocation is consistent with both non-

discriminatory appointments and nondiscriminatory revocations of designations as producers for the Reinsurance Facility. Commissioner Richards excluded testimony of arbitrary appointments of producers; for the reasons stated, we hold this to have been error. And we so hold.

For the reasons stated, the appealed order is reversed and the case is remanded for reconsideration by the Department of Insurance in accordance with this decision.

Reversed and remanded.

SHAW, J., concurs.

CURETON, J., concurs separately.

CURETON, Judge (concurring):

I concur in the result reached by the majority but would base the decision, as did the administrative hearing officer, solely on the fact that at the time he sought to revoke Mungo's producer's license, the Insurance Commissioner had developed no objective criteria for revoking such licenses and thus, his actions were arbitrary.

The majority concludes that Section 38-37-150, 1976 Code of Laws of South Carolina, provides two separate bases for designating producers for the Reinsurance Facility: (1) market need, and (2) the Legislature's desire to accommodate agents who have lost their agency contracts because of the South Carolina Automobile Reparation Reform Act of 1974. I do not glean the latter purpose from the Act.

Even if I were to agree with the majority that the Act provides for the designation of Mungo as a producer just because he lost agency contracts, nevertheless the pertinent inquiry remains whether Mungo was, in fact, designated solely because he lost agency contracts. It seems to me that there is substantial evidence that Mungo's appointment as a producer in the Irmo area was based on market need. In an August 1975 letter to producers, the Chief Insurance Commissioner for South Carolina outlined his policy regarding appointments by stating that the purpose of the 1974 Act was to make insurance available to citizens of South Carolina, not to keep "insurance agents in the automobile insurance business." The letter continued:

Failure to maintain high standards in the conduct of your business, *especially the market served by you,* [emphasis added] is not in the public interest. . . .

Attached to the letter were several rules governing the handling of insurance by designated producers. Included in the rules is the provision that after August 1, 1975, designations would only be made based upon need for an automobile insurance agent in the particular area where the applicant proposed to operate. Mungo's 1977 application for appointment as a producer certified that he had read the August 1975 letter and rules. The same Commissioner who designated Mungo as producer in 1977, also wrote the August 1975 letter and promulgated the rules. With such policy in existence in 1977, I find it difficult to conceive of the idea that the Commissioner designated Mungo a producer on any basis other than market need.

The majority notes that the Commissioner's letter of August 8, 1975, and rules regarding appointment of designated producers after August 1, 1975, should not apply to Mungo because he was already a producer on August 8, 1975. We gather nothing from the record that would indicate this to be the case. A review of the August 1975 letter, which the majority states was sent to Mungo as a producer, contains no addressee nor does it indicate in any way that it was sent to Mungo in 1975.

Nevertheless, I agree with the majority that the Commissioner's revocation of Mungo's license was arbitrary, and therefore cannot be sustained. While the Legislature may provide for revocation of an insurance agent's authority to operate, the Commissioner cannot arbitrarily assume the power to revoke such agent's authority without having established reasonable grounds for revocation beforehand. 44 C. J.S. *Insurance* Section 85 (1945).

I agree with the majority that the Commissioner had implied authority to revoke Mungo's designation as a producer. However, as pointed out by the hearing officer, at the time of Mungo's license revocation, the Commissioner had no objective criteria for revoking licenses of producers. Without such criteria his actions in this case were arbitrary. We observe that there is no evidence that the Commissioner

had established any clearly defined service or market areas in Columbia, without which Mungo had no way of knowing what constituted his service area. Taken to its logical conclusion, if Mungo's authority to operate as a producer were limited to a specific location, moving his office next door would constitute a violation of the terms of his license.