ZEHMER, Judge.
Okaloosa Asphalt Enterprises (Okaloosa Asphalt), as a class representative, appeals a final judgment denying its claim to a pro rata share of the overcharge refund that Okaloosa County Gas District (Gas District) received in December 1979. The refund came from its interstate gas supplier, Unit ed Pipeline Company, pursuant to a settlement approved by order of the Federal Energy Regulatory Commission. The issue on appeal is whether the trial court erred in rejecting appellant’s trust fund theory as the proper legal basis for its claim and, instead, applying the “arbitrary or capricious” standard to the Gas District’s decision to use the refund to retire debt. We affirm.
The refund of $803,961.35 represented excessive rates which the interstate supplier had charged the Gas District from 1971-78. These overcharges had, in turn, been passed through by the Gas District to its customers, including appellant. Neither the settlement, the order, nor the refund check contained any restrictions or conditions on the use of the funds by the Gas District. The Gas District is not subject to regulation or supervision by any state regulatory agency, but rather is supervised by its board of directors. After considering several applications of the money, including a refund to its customers, the Gas District’s board of directors decided to use the refund to retire part of its outstanding debt consisting of $1,080,000 of bonds issued years before bearing interest at 4.1 percent and $170,000 of bonds bearing interest at 5.125 percent. The evidence established that current interest which could have been *1096 earned on the refund proceeds was 2 to 3 times the interest being paid on the bonds.
Appellant was a customer of the Gas District during the relevant period and initiated this class action in an attempt to recover a pro rata share of the refund for itself and other similarly situated customers. The amended complaint alleged that the Gas District illegally retained United Pipeline Company gas rebates paid to the Gas District and that the conversion of these funds was “an unlawful abuse of the monopoly power by the Defendant injuring Plaintiff and other customers of the Defendant in their business or property.” Appellant requested a “refund of all rebates received by the Defendant to the consumers in a manner that is just and fair under the totality of the circumstances presented in this complaint.”
Much of the evidence and testimony received at trial was directed to the wisdom of using the refund to retire the bonds. Appellant contended that the monies refunded to the Gas District should be treated as held in trust for the customers that paid the excess rates during the relevant period. Further, appellant questioned the business judgment of the decision to retire debt being funded at interest rates far below current market levels. It was brought out, however, that most municipalities and other public entities which operate gas systems not subject to supervision or regulation by the state have no policy providing for automatic pass through of rebate monies to their customers. This is in contrast to private gas companies governed by state public service commissions, which usually provide for automatic refund of rebates by the distributor to its customers.
After hearing the evidence and receiving briefs from the parties, the court entered an Amended Final Judgment on December 18, 1986, ruling that:
There is no statutory requirement that this Court is aware of that requires the Defendant to refund its rebate to consumers. Neither is there a rule that Defendant is subject to, since the act creating [the Gas District] specifically exempted it from the rules and directives of any state regulatory agency. Further, the Court agrees with Defendant that the proprietary trust fund theory advanced by Plaintiff is not binding on Defendant under the facts and circumstances of this case. Therefore, there is no legal mandate for a refund of the rebate.
On the second theory raised by the Plaintiffs complaint that the Defendant should have refunded the rebate to its customers; at least to the ones who could be identified as having actually being [sic] paid the overage, the Court finds considerable wisdom supporting that. The law of Florida, however, is that a Court should not substitute its judgment for the decision of the governmental entity. It may intervene (the Court), but only when there is sufficient evidence that the public body has acted in an arbitrary or capricious manner. The Court finds no evidence of that.
(R. 1229).
Okaloosa Asphalt contends on appeal that while the arbitrary and capricious standard applies to the rate-making function of the Gas District, this standard should not apply to the legal entitlement to a refund for overcharge. Rather, appellant argues, the refund money is received in trust for the Gas District’s customers and the trust obligation may not be discharged by the discretionary decision of the Gas Board to apply the refund to some other use which might arguably benefit only future customers. Appellant candidly agrees “that if the trial court applied the correct legal standard, i.e., that the judiciary may control the entitlement to the refund only if the Gas District was arbitrary or capricious regarding the wisdom of the refund, then there is not sufficient basis to reverse the trial court in this regard.” (Appellant’s Brief, p. 3). We agree with appellant’s concession that we need not consider the sufficiency of the evidence to prove whether the Gas District’s decision was arbitrary and capricious, and confine this discussion to the legal issue of the correct legal standard to apply to the Gas District’s action.
*1097 Chapter 29334, Laws of Florida (1953), created the Okaloosa Gas District for the purposes of “acquiring, constructing, owning, operating, managing, maintaining, extending, improving and financing one or more gas distribution systems.” The Gas District is run by a board of directors that has the power to do all things necessary or convenient to accomplish these purposes. The board does not need the consent of other state agencies in order to “construct, acquire, or improve such system or systems, or to exercise any of the powers granted in [ch. 29334].” Furthermore,
[n]either the rates, fees, rentals or other charges to be established and collected for gas and services of such system or systems, when constructed, acquired or improved as provided in this Act, nor bonds which may be issued hereunder, shall be subject to approval, supervision, regulation or control of any bureau, board, commission or other like instrumentality of the State.
(R. 611). This organic law unambiguously empowers the Gas District to operate a gas distribution system free from supervision and regulation by the state. We agree with the trial court that the Gas District is an independent public agency whose discretionary decisions, if not arbitrary, capricious or an abuse of the discretion so conferred, must be upheld by the courts.
Appellant argues that this court should decide as a matter of state law that the refund for excess charges collected in violation of federal law should be restored to the customers who paid the overcharges. It points out that such result would usually obtain in respect to gas distributors regulated by a state agency. Although, we agree, as did the trial court, that there is considerable wisdom in this contention, nevertheless, the courts may not control or interfere with the exercise of the Gas District’s discretion absent a showing of abuse or arbitrary and capricious acts. If the law is to circumscribe the Gas District’s discretion to compel that such refunds be passed through to the overcharged customers, it is more properly a legislative function to so direct by appropriate amendment to the statute creating and controlling the Gas District.
The trust fund theory advanced by appellant was fully discussed in New Mexico Electric Service Co. v. New Mexico Public Service Commission, 472 P.2d 648 (N.M.1970). Holding that the state public service commission had no authority to order an electric company, which had received a refund from a wholesale power supplier after a federal order requiring the reduction of wholesale contract rates, to pass the refund on to its general customers, that court observed that:
the monies here involved were ordered paid over to appellee by the Federal Power Commission without any restrictions. In fact, there is nothing in the order indicating an intention on the part of the Commission to create a “trust fund” for the benefit of the ultimate consumers.
Id. at 650. Similarly, in the case at bar nothing in the federal commission’s order indicates an intention to create a trust fund for the benefit of the appellant and other ultimate consumers.[1] See also Straube v. Bowling Green Gas Co., 360 Mo. 132, 227 S.W.2d 666 (1950) and Lightfoot v. City of Springfield, 361 Mo. 659, 236 S.W.2d 348 (1951). Although the federal courts in the cases cited by appellant[2] actually imposed a trust upon the funds and ordered a gas distributor to make refunds to its customers, none of those cases set forth any rule of law which mandates a refund from the distributor to the customer under all cir *1098 cumstances. Rather, it is apparent that, based upon the particular facts of each case, these courts were exercising their ancillary jurisdiction to disburse a fund created by the court itself. Cf. Natural Gas Pipeline Co. v. Federal Power Commission, 141 F.2d 27 (7th Cir.1944). In the case at bar, the state court did not create the fund represented by the overcharge refund and thus had no ancillary jurisdiction to direct the disbursement of the funds in any particular manner by the Gas District.
We find no error in the legal standard applied by the court below to the Gas District’s disposition of the refund. The appealed judgment is, therefore,
AFFIRMED.
SHIVERS, J., and PEARSON, TILLMAN (Ret’d), Associate Judge, concur.

. Pursuant to our request, the parties filed supplemental briefs discussing the federal statutes and regulations governing such overcharges and rebates. No federal statute, regulation or order imposes any restriction on the disposition of such rebates upon receipt by the retail gas distributor.

. Atlantic Refining Co. v. Pub. Serv. Comm. of N.Y., 360 U.S. 378, 79 S.Ct. 1246, 3 L.Ed.2d 1312 (1959); Federal Power Comm. v. Interstate Natural Gas, 336 U.S. 577 (1949); Public Service Comm. of the State of New York v. F.P.C., 543 F.2d 757 (D.C.Cir.1974); Texas Gas Transmission Corp. v. F.P.C., 441 F.2d 1392 (6th Cir.1971); National Gas Pipeline Co. v. F.P.C., 134 F.2d 263 (7th Cir.1942).