23095

Steven W. HAMM, Consumer Advocate for the State of South Carolina, Appellant v. CENTRAL STATES HEALTH AND LIFE COMPANY OF OMAHA, John G. Richards, V, Chief Insurance Commissioner, and the South Carolina Department of Insurance, Respondents.

(386 S. E. (2d) 250)

Supreme Court

*Steven W. Hamm, Raymon E. Lark, Jr.,* and *Nancy J. Vaughn,* all of *S. C. Dept. of Consumer Affairs,* Columbia, *for* appellant.

*James C. Gray, Jr.,* of *Nelson, Mullins, Riley & Scarborough;* and *Susanne K. Murphy,* of *S. C. Dept. of Ins.,* Columbia, *for respondents.*

Heard Sept. 18, 1989.

Decided Oct. 30, 1989.

HARWELL, Justice:

This is an insurance rate case certified by the Court of Appeals to the Supreme Court pursuant to S. C. Code Ann. § 14-8-210(c) (Supp. 1988). The issues presented are (1) whether the Insurance Commissioner has the authority to order a refund when rates are determined to be unlawful and; (2) if such authority exists, did the Insurance Commissioner err by either failing to refund monies collected pursuant to an unlawful increase or by failing to account for overcharges in calculating the proper rate on remand. We reverse and remand.

## FACTS

Respondent Central States Health and Life Company of Omaha (Central States) filed an application for a rate increase with the Insurance Commissioner (Commissioner) for a comprehensive major medical policy. Appellant Hamm intervened and was made a party to the proceeding. The Commissioner granted Central States a 9% increase for the policy. Hamm appealed, contending that the part of the increase based on medical intensity was not supported by substantial evidence. The circuit court affirmed the Commissioner's order. This Court reversed the portion of the Commissioner's order which allowed a rate increase as to medical intensity on the basis that such increase was not supported by substantial evidence and remanded the case to the circuit court with instructions to remand the case to the Commissioner for a determination of the appropriate rate to be charged. This Court specifically required Central States to refund any monies erroneously collected under the increased rates.

Central States filed a petition for rehearing. This Court granted rehearing and issued a substituted opinion[1] for the previous opinion. The substituted opinion was substantially the same as the previous opinion except that the substituted opinion deleted reference to a refund. The substituted opinion ordered the circuit court to remand the case to the Commissioner in order for him to "determine the appropriate rate to be charged by Central States consistent with [the] opinion." On remand, the Commissioner reduced the

---

[1] *Hamm v. Central States Health and Life Co. of Omaha,* 292 S. C. 408, 357 S. E. (2d) 5 (1987).

rate increase from 9% to 5.1% retroactively to August 1, 1987, but did not order refunds. The Commissioner also failed to take the overcharge into account in determining the 5.1% rate. Hamm petitioned for judicial review, contending that a refund should have been ordered by the Commissioner. The circuit court affirmed the order of the Commissioner and dismissed the petition. Hamm appealed to the Court of Appeals at which time the Court of Appeals certified the case to this Court for an interpretation of our substituted opinion. 298 S. C. 446, 381 S. E. (2d) 355.

## DISCUSSION

### I. IMPLIED AUTHORITY TO ORDER A REFUND

Hamm argues that the Commissioner has inherent and implied authority to order refunds in a situation such as this. Hamm relies on two cases to support his position: *Parker v. South Carolina Public Service Commission and South Carolina Electric and Gas Co.*, 280 S. C. 310, 313 S. E. (2d) 290 (1984) (*Parker I*) and *Parker v. South Carolina Public Service Commission and South Carolina Electric and Gas Co.*, 285 S. C. 231, 328 S. E. (2d) 909 (1985) (*Parker II*).

In *Parker I*, the consumer advocate appealed from the order of the trial court sustaining the Public Service Commission's (PSC) approval of an electrical rate increase requested by South Carolina Electric & Gas (SCE&G). The consumer advocate argued that the PSC had erred in including the injuries and damages reserve account in approving SCE&G's rate base. We agreed and remanded the case in order that the PSC make the proper rate adjustments.

On remand the PSC removed the account from the rate base but did not adjust the rates. The consumer advocate appealed the case again. In *Parker II*, we reversed the PSC and stated that the PSC's order was improper because it allowed SCE&G to retain funds to which it was not entitled. Again, we remanded the case and ordered that the PSC make the proper adjustments in customer utility rates brought about by deletion of the account from SCE&G's rate base. Hamm argues by analogy that because we have held that SCE&G, a regulated utility, cannot keep funds paid by

ratepayers to which it is not entitled, that neither can Central States, a regulated insurer.

Hamm also submits that the Commissioner has implied authority arising by statute to order a refund. In support of this argument, Hamm cites S. C. Code Ann. § 38-71-310 (Supp. 1987)[2] for the proposition that it is the duty of the Commissioner to approve rates which are reasonably related to the benefits provided. Hamm argues that where a statute imposes a duty, it confers by implication every particular power and every reasonable means necessary for the exercise of or the performance of the power.[3]

Central States argues that in this case,. the Commissioner has neither express nor implied powers to order refunds. Central States submits that the Commissioner has no authority to order a refund because no such authority has been specifically granted. In support of this argument Central States relies on three cases: *Mungo v. Smith,* 289 S. C. 560, 347 S. E. (2d) 514 (Ct. App. 1986); *Calhoun Life Ins. v. Gambrell,* 245 S. C. 406, 140 S. E. (2d) 774 (1965); *South Carolina Electric & Gas Co. v. Public Service Comm'n,* 275 S. C. 487, 272 S. E. (2d) 793 (1980). Central States proffers *Mungo* and *Calhoun Life* for the proposition that because administrative agencies are creatures of statute their powers are dependent upon statute and they must find within the statute a warrant for the exercise of any authority which they claim. Central States' reliance on *Mungo* and *Calhoun Life* is misplaced. *Mungo* involved the issue of whether the insurance commissioner had the implied authority to revoke the designation of a producer for the Reinsurance Facility. Although the case was reversed, the Court of Appeals held in *Mungo* that coincident with the insurance commissioner's statutory right to employ, was the implicit right to discharge provided there was no further need for employment. The implied right to discharge was a logical consequence of the statutory power to employ.

---

[2] Section 38-71-310 grants the Commissioner, among other things, the authority to disprove or withdraw approval of filed forms of policies or certificates if he determines the benefits provided in the policies or certificates are unreasonable in relation to the premiums charged.

[3] 73 Am. Jur. (2d) *Statutes* § 209 (1974).

In *Calhoun Life*, the insurance commissioner appealed from the order of the trial court enjoining him from enforcing a self-made regulation that allowed him to regulate rates and commissions with respect to life insurance and credit accident and health insurance. The insurance commissioner argued that this power arose "by reasonably necessary implication" from statutes existing at that time. The insurance commissioner relied on S. C. Code Ann. § 37-56 (1962), which empowered him to make certain rules and regulations not inconsistent with the law, as well as other statutes, for the power to regulate rates and commissions. This Court examined the statutes relied upon by the insurance commissioner and found that none of them contained any authority through which a reasonably necessary implication of the power to regulate rates and commissions could be inferred. Consequently, this Court affirmed the order of the trial court.

Since *Calhoun Life* was decided in 1965, the legislature has enacted and recodified certain statutes relating to insurance. There now exists a statute that expressly grants the insurance commissioner the power to supervise and regulate the rates of every insurer in this State. S. C. Code Ann. § 38-3-110(1) (Supp. 1987). From this statute, we find that the authority to make refunds of monies collected under an unlawful rate is a reasonably necessary implication arising from the authority of the Commissioner to regulate rates.

*Central States* advances *SCE&G* to support its position stating that "[t]he Commission simply does not have any implied power to award refunds in the nature of reparations for past rates or charges; such powers must be expressly conferred by statute." *SCE&G*, 275 S. C. 487 at 490, 272 S. E. (2d) 793 at 795 (1980). *SCE&G* is easily distinguished from the present case. In *SCE&G*, we held that the PSC had no authority to direct refunds pursuant to past-approved lawful rates. We reasoned that to have empowered the PSC to direct refunds in *SCE&G*, would have permitted them to engage in retroactive ratemaking. Under the present facts, the rates approved by the Commissioner were found to be *unlawful*. As such, a refund in this instance would not be considered retroactive ratemaking.

Under the same principles, we reject Central States' argument that the legislature's enactment of S. C. Code Ann. § 38-73-1100 (Supp. 1988) expressly authorizing the Commissioner to direct refunds, but only in connection with property and casualty insurance, indicates that the Commissioner has no implied power to order refunds in this case. We support Hamm's position that the situation contemplated by Section 38-73-1100 is that where: (1) the Commissioner approves a rate; (2) the rate is placed into effect without challenge; (3) several years later, the Commissioner determines the rate is excessive and; (4) the Commissioner then wants to refund customers for the company's excessive aggregate underwriting profit. Under this scenario, absent statutory authorization, the Commissioner could not order refunds as he would be engaging in retroactive ratemaking. However, in the situation before us, the Commissioner would not be engaging in retroactive ratemaking by ordering refunds where the approved rates were appealed and found to be unlawfully established.

Finally, Central States submits that the *Parker* cases are inapplicable to this case because the statutory authority and specific powers of the PSC are different from the powers held by the Commissioner. This argument is without merit. While we acknowledge that the powers held by the PSC and the Commissioner are different, the same logic and principles of the *Parker* cases apply here. That is, when a regulated company requests a rate increase which is approved by the regulating authority, but timely appealed and found to be unlawfully established, that company cannot keep funds to which it was never entitled. This is a matter of public policy and such reasoning would apply no matter what regulated industry is involved.

We find that S. C. Code Ann. § 38-3-110(1) (Supp. 1987), which imposes the duty on the Commissioner to supervise and regulate rates, by reasonable and necessary implication, confers the authority upon the Commissioner to make refunds in this case. Otherwise, Central States would receive a windfall benefit to which it was not legally entitled. The authority of the Commissioner to order refunds in this case is the logical and consequential incident of his right to regulate rates. Where as here, a statute

imposes a duty on the Commissioner to regulate rates, it also implicitly confers every particular power and every reasonable means necessary for the exercise or performance of that power.[4] Accordingly, we find that the Commissioner does have the implied power to direct refunds pursuant to a determination that such rate increase has been found to be unlawfully established.

## II. ERROR OF LOWER COURT IN FAILING TO EITHER REFUND MONIES OR TAKE OVERCHARGES INTO ACCOUNT

This issue involves the interpretation of our substituted opinion in *Hamm*. In *Hamm*, we found that the portion of the 9% rate increase based on medical intensity that the Commissioner approved, was not supported by substantial evidence. We remanded the case for a determination by the Commissioner of "the appropriate rate to be charged by Central States *consistent with [the] opinion.*" *Hamm*, 292 S. C. 408 at 411, 357 S. E. (2d) 5 at 6 (1987) (emphasis added). Our consideration upon rehearing was that requiring the Commissioner to make refunds might have been economically inefficient. Therefore, we deleted reference to a refund in our substituted opinion. Our intention was to defer to the discretion of the Commissioner in electing the most cost-effective means of affording relief. On remand however, the Commissioner did not order refunds or take the overcharge into account in setting the new rate.

It is clear from our discussion in *Hamm* that the Commissioner erred in approving the rate increase. The only reasonable interpretation of the substituted opinion is that the Commissioner reduce the rate increase according to the evidence and either refund the overcharges collected under the unlawful 9% rate or account for any overcharges collected in establishing the proper rate. Any other interpretation would leave the statement, "consistent with [the] opinion," devoid of meaning.

Accordingly, we reverse the order of the circuit court affirming the Commissioner's reduction of the rate increase and remand to the circuit court. The circuit court shall

---

[4] 73 Am. Jur. (2d) *Statutes* § 209 (1974).

remand this case to the Commissioner with instructions to either refund any monies unlawfully collected under the 9% rate or alternatively, take any overcharges collected under the 9% rate increase into account in establishing the proper rate. Such relief shall be afforded retroactively to the date that the unlawful 9% rate went into effect. Overcharges collected under the 5.1% rate increase, if any, must also be considered in refunding monies or in establishing the proper rate, since the Commissioner failed to comply with our mandate in *Hamm*, which required him to account for such overcharges in setting that rate.

Reversed and remanded.

GREGORY, C. J., and CHANDLER, FINNEY and TOAL, JJ., concur.