24280

Robert E. MOODY, as Class Representative of the Electric Utility Ratepay-
ers in Orangeburg City and County, State of South Carolina, Appellant v.
CITY OF ORANGEBURG and the Department of Public Utilities of the
City of Orangeburg, Respondent.

(460 S.E. (2d) 374)

Supreme Court

*A. Camden Lewis* and *Pete Kulmala, Lewis, Babcock & Hawkins,* Columbia, *for appellant.*

*James M. Brailsford, III* and *Durham T. Boney, Robinson, McFadden & Moore, P.C.,* Columbia, *for respondent.*

Heard May 17, 1995.

Decided July 24, 1995.

BURNETT, Justice:

This is an appeal from the Master's order denying Appellant (Moody) an additional rate refund from Respondent (Orangeburg) and denying certification of this matter as a class action. We affirm.

## FACTS

Orangeburg owns and operates its own electric utility system and purchases electricity wholesale from the South Carolina Electric and Gas company, Inc. (SCE&G) for resale to its retail customers. Although the wholesale rates which SCE&G charges Orangeburg are regulated by the Federal Energy Regulatory Commission (FERC), neither FERC nor the South Carolina Public Service Commission (PSC) has any jurisdiction over the rates Orangeburg charges.

An audit of SCE&G by FERC revealed that Orangeburg had been overcharged by SCE&G for energy costs during the test phase of a nuclear power plant from November 15, 1982 until December 31, 1983. Although the rates charged were approved by the PSC, special fuel cost rates apply during testing periods. Since the rates Orangeburg paid were miscalculated, FERC ordered SCE&G to refund to Orangeburg $3,917,021.27, consisting of $2,010,034.56 in principal and $1,906,986.71 in interest. Orangeburg refunded the principal portion as a prospective rate reduction to its current customers' utility bills for August 1990 through July 1991 and applied the interest portion to capital improvements with the goal of lowering future electric rates.

During the test phase, Moody received electric service under a contract with Orangeburg. Moody terminated his

electric service with Orangeburg in February 1991. Consequently, he received only eight month's benefit from the rate reduction in the amount of $8.17.

The Master held that since Orangeburg had complete discretion to determine the disbursal of the refund, neither Moody nor the original ratepayers were entitled to additional rate relief or a refund. The Master further determined that Moody was not an appropriate representative of the class and declined to certify this matter as a class action.

## ISSUE

Did the Master err by determining that the original ratepayers were not entitled to a refund?

## DISCUSSION

Moody contends that the original ratepayers are entitled to the principal and interest refunded to Orangeburg from SCE&G and that he was an appropriate representative of the class. We disagree.

Article VIII, Section 16 of the South Carolina Constitution specifically authorizes any municipality to own and operate electric utilities. The furnishing of electricity by a municipality is a governmental function,[1] and discretionary decisions of municipalities will not be disturbed "except in cases of fraud or clear abuse of power, or where unreasonable or capricious."[2] Moreover, the PSC does not have authority to regulate contracts or rates made by any municipality with its customers. *See* S.C. Code Ann. § 58-27-1010 (1977).

In *SCE&G v. Pub. Serv. Comm'n*,[3] we determined that the PSC does not have authority to direct refunds pursuant to past-approved *lawful* rates. In *SCE&G*, as in the present case, retail customers paid rates which were not merely proposed but had been approved by the PSC; however, miscalculations were made by SCE&G as to the ultimate cost of power to the utility. We held that although the rate was based upon

---

[1] *Looper v. Easley*, 172 S.C. 11, 15, 172 S.E. 705, 706 (1934), *overruled on other grounds, McCall v. Batson*, 285 S.C. 243, 329 S.E. (2d) 741 (1985).

[2] *SCE&G v. South Carolina Pub. Serv. Auth.*, 215 S.C. 193, 212, 54 S.E. (2d) 777, 785 (1949), *citing Schroeder v. O'Neill*, 179 S.C. 310, 322, 184 S.E. 679, 684 (1935).

[3] 275 S.C. 487, 272 S.E. (2d) 793 (1980).

miscalculations, because it had been approved, it was *lawful*, and the PSC was not authorized to direct disbursement of the refund. We also concluded that when a windfall results from a *lawfully* established rate, the proper remedy is prospective rather than retroactive. *Id.; see also Okaloosa Asphalt Enterprises, Inc. v. Okaloosa County Gas Dist.*, 524 So. (2d) 1095 (Fla. Ct. App.), *cert. denied*, 534 So. (2d) 400 (Fla. 1988) (upholding use of refund to retire outstanding bond debt since the utility was an independent public agency and the decision was not arbitrary, capricious, or an abuse of discretion); *West v. City of Batavia*, 155 Ill. App. (3d) 925, 108 Ill. Dec. 547, 508 N.E. (2d) 1124, *cert. denied*, 116 Ill. (2d) 577, 113 Ill. Dec. 320, 515 N.E. (2d) 129 (1987) (upholding use of refund to finance improvements in the utility since the determination of rates, charges, and terms of service are solely within the legislative discretion of municipalities; lawfully established rates are not made unjust and unreasonable by unknown subsequent events which result in a refund).

Moody cites *Hamm v. Central States Health and Life Co. of Omaha*[4] for the proposition that when a rate increase is later disallowed, equity requires that the ratepayers receive a refund. *Hamm* involved a rate increase for insurance which was collected in a fund during the pendency of an appeal. After determining that the proposed rate was excessive and thus *unlawful*, we held that disbursal of the accumulated fund could be directed. *Id.* Conversely, the situation here involved a past-approved, *lawful* rate, rather than a proposed rate which was later found to be *unlawful*. In addition, in the present case there was no accrued fund from which to direct disbursal. Accordingly, we uphold Orangeburg's allocation of the refund.

Moody next contends that he has a contractual right to the refund and relies upon a provision in the contract between him and Orangeburg which states that the customer is entitled to a refund where overcharges result from "a misapplied schedule, an error in reading the meter, a skipped meter reading, or any other human or machine error." We conclude that this provision pertains to clerical errors and not to the application of lawfully established rates.

---

[4] 299 S.C. 500, 386 S.E. (2d) 250 (1989).

Moody relies upon *Webbs Fabulous Pharmacies, Inc. v. Beckwith*[5] when contending that the original ratepayers are entitled to the interest portion of the refund, on the theory that interest generally follows principal. This contention is inapplicable to the facts in the present case, because Orangeburg did not have a legal obligation to refund the principal. Instead, Orangeburg's decision to return the principal and invest the interest was discretionary.

Under these facts and circumstances, we conclude that Orangeburg had broad—but not unlimited—discretion when managing the electric utility, and Moody has not established that the allocation of the refund was arbitrary, capricious, or fraudulent. Accordingly, we find that Orangeburg acted reasonably and did not abuse its discretion by applying the refund prospectively.

Moody's class action argument is without merit and is disposed of pursuant to Rule 220(b)(1), SCACR, and the following authorities: *Waller v. Seabrook Island Property Owners Assoc.*, 300 S.C. 465, 388 S.E. (2d) 799 (1990); Rule 23(a), SCRCP.

Affirmed.

FINNEY, C.J., AND TOAL, MOORE and WALLER, JJ., concur.

---

[5] 449 U.S. 155, 101 S.Ct. 446, 66 L.Ed. (2d) 358 (1980) (when there is a legal obligation to refund principal, interest must also be refunded).